No. 5.—THOMAS S. CHAPPELL, administrator, &c. plaintiff in error, *vs.* L. CAUSEY, administrator, &c. and JESSE STALLINGS and wife, defendants in error.

[1.] If a distributive share of an intestate's personal estate, accrue to a married woman during coverture, and the husband die before distribution is made, and without any act on his part reducing it to possesion, it survives to the wife.

[2.] H. died, leaving a widow and ten children, and a paper purporting to be his last will and testament. He bequeathed the whole of his estate to *nine* children. Upon the division, the husband of one of the daughters received two negroes, and after the death of the husband, the probate of the will was revoked, and an intestacy declared, on account of the insanity of the testator, and the two negroes were returned to the administrator: *Held*, that the possession of the negroes by the husband, was not such, under the law, as caused his marital rights to attach, but that the same belonged to the wife, by virtue of her survivorship.

In Equity, in Twiggs Superior Court. Tried before Judge HANSELL, October Term, 1851.

This was a bill filed by Littleberry L. Causey, as the administrator of James Hale, in the nature of a bill of interpleader, against Thomas S. Chappell, administrator of William W. Hodges, deceased, and Jesse Stallings and Mary Ann, his wife. The following facts appeared on the trial: William W. Hodges and Mary Ann Hale—the daughter of James Hale—were married in the year 1839, during the lifetime of the said Hale. James Hale died 25th Oct. 1847, leaving a paper purporting to be his last will and testament, which was admitted to probate by the Court of Ordinary of Crawford County, at Nov. Term, 1847. James C. Hale, the executor, qualified, and at January Term, 1848, of said Court of Ordinary, an order was passed, at the instance of the executor, appointing commissioners to distribute the estate among the several legatees; the distribution was made, and two negroes, Jane and Hannah, worth about $800, were turned over to Wm. W. Hodges, who kept possession of them during his life, and at his death, in

March, 1848, the negroes came into the possession of Thomas S. Chappell, his administrator, and were by him inventoried and appraised as the property of W. W. Hodges. The answer of Chappell stated, that this was done with the knowledge, approbation and consent of Mary Ann, the widow, who afterwards intermarried with Jesse Stallings. Afterwards, at May Term, 1848, of the said Court of Ordinary, the probate of the will of James Hale, was revoked and set aside, on the ground that the testator was not of sound and disposing mind; and letters of administration were granted to Causey some short time thereafter. Chappell, as the administrator of Hodges, under the advice of the Court of Ordinary, turned over to Causey, as the administrator of Hale, the two negroes, Jane and Hannah, who were sold by Causey—he still holding the purchase money.

The object of the bill filed by Causey, was to ascertain to whom the distributive share of Mary Ann Hale—then Hodges, now Stallings—should be paid; Chappell, as the administrator of Hodges, claiming that the marital rights attached to Jane and Hannah; and that as administrator, he was entitled to an amount equal to their value; Stallings and wife, claiming under the right of survivorship of the wife.

The Court below charged the Jury, that, "in his opinion, from the facts admitted, the defendants, Stallings and wife, were entitled to the funds put in litigation by the bill; and that Chappell, as the administrator of Hodges, was entitled to no part thereof."

Chappell, as administrator of Hodges, excepted to this dedecision, and brings it to this Court for review.

SAMUEL HALL, for plaintiff in error.

C. B. COLE, for defendant.

*By the Court.*—LUMPKIN, J. delivering the opinion.

James Hale, of Crawford County, died in October, 1847, leaving a widow and ten children, and a paper purporting to be

his last will and testament, which was proven before the proper Court, in November thereafter; and James C. Hale, the son, qualified as executor. At the January Term of the Court of Ordinary next ensuing, commissioners were appointed to divide the estate among the nine legatees to whom it was bequeathed; the widow and one of the children having been excluded from all participation in the property of the deceased. In making the distribution, two negroes, Jane and Hannnah, worth about $800, were assigned to Wm. W. Hodges, who had intermarried, in 1839, with Mary Ann Hale, one of the daughters of the deceased. Upon the receipt of these negroes, Hodges made and returned a refunding bond to the executor, in terms of the law. Hodges departed this life in March, 1848, having kept possession of the property up to the time of his death, when it was turned over to Thomas S. Chappell, the administrator, with the knowledge, approbation and consent of Mary Ann Hodges, his widow; and the same was, by the said Chappell, inventoried and appraised as a part of the estate of Hodges.

Subsequently, to wit, at the May Term, 1848, of the Court of Ordinary, the probate of the paper purporting to be the last will and testament of James Hale, was revoked and set aside, and an intestacy upon the estate declared, upon the ground that the testator was not of sound and disposing mind and memory, when said instrument was made and published. In July, 1848, Littleberry B. Causey was duly appointed administrator generally, upon the estate of Hale. The legatees of Hale voluntarily surrendered up to Causey, the administrator, the property which they had received under the will; and Chappell, the administrator of Hodges, returned Jane and Hannah, under the order and direction of the Court of Ordinary of Twiggs County, to which he was answerable for his actings and doings upon the estate of Hodges.

These two slaves were sold by Causey, as a portion of the estate of the intestate, and the proceeds being in his hands, he filed his bill, on the Chancery side of the Court, for instruction as to whom it belongs: whether to Chappell, the administrator of Hodges, the former husband of Mary Ann Hale, or

to her, as survivor, and through her, to Jesse Stallings, the present husband ?

The question then made by the record, is, were the slaves, Jane and Hannah, so reduced to possession by Hodges in his life time, as to cause his marital rights to attach ? or does the interest in the estate of her father, survive to Mary Ann, the daughter ?

[1.] We hold these two propositions to be incontrovertible : *First,* that the possession by the husband, in order to vest the property in him, must be *rightful;* and *secondly,* that the only rightful possession which could have been acquired to any portion of the estate of James Hale, was as *distributee,* through the administrator. If these positions be sound, and we entertain no doubt as to either of them, they would seem to be conclusive upon the rights of these parties. For the only possession of Hodges was that which he obtained under the will of Hale, which, with the probate thereon, were vacated and declared a nullity, on account of the insanity of the testator ; and he died long before the estate of Hale was distributed by Causey, the administrator. Indeed, it is still in hand, *quoad* this controversy, to be disposed of under the decree of the Court, upon the conflicting claims which are set up to the fund.

[2.] We propose, however, to review briefly, some of the leading cases, as to what is a reduction into possession, by a husband, of a wife's *choses in action,* hoping thereby to satisfy the exceptant himself, that the wife's right of survivorship in this property, should prevail over the claim which is preferred by the representatives of the former husband.

In *Clancey on Married Women,* 353, the father of a married woman had drawn a check on his banker, in favor of his daughter, for ten thousand pounds, which she presented at the banker's on the same day, and took from them a promissory note for the money, payable on demand, and then gave it to her husband. The husband afterwards applied to the bankers for one thousand pounds of the money, which was paid him, and he received the interest on the remaining nine thousand pounds during his life, but never was paid any more of the principal. He afterwards died

and left his wife surviving, and a bill was filed, praying that the nine thousand pounds might be declared to be a part of his personal estate. The wife, in her answer, insisted that it formed no part of his personal estate. It was held, that the note given to the wife by the banker, must be considered a *chose in action*, which survived to her.

In the case of *Bates vs. Dandy*, 2 *Atkyns*, 206, a brother died intestate, leaving three sisters, among whom his property was devisable. Dandy, the husband of one of the sisters, received two mortgages for one hundred and fifty pounds each, as the share of his wife, which he pledged to the plaintiff for two hundred pounds advanced to him, giving his promise to assign them. After his death, on a bill against his administrator and the mortgagors, to foreclose, Lord *Hardwicke* held, that this was but a disposition of the mortgages, *pro tanto*, and that after satisfying the plaintiff, whose equity he sustained, the mortgages belonged to the wife, as *her choses in action*.

In *Lodge vs. Hamilton*, 2 *Serg. & R.* 491, a recognizance, taken in the Orphan's Court, for the wife's share of the land, in the name of the husband and wife, was held, not to be such a reduction of the wife's property, which, by this process, had become personal, into possession, as to defeat her rights of survivorship. " No case," says the Chief Justice, in his opinion, ".has been, or can be cited, where the wife surviving her husband, .has been deprived of her choses in action, unless he had obtained the possession, or made some assignment or disposition of them in his life time, or stood in the light of a purchaser."

In *Elms vs. Hughes*, 3 *Dessau. Ch. Rep.* 155, 160, it is decided that if a husband possess himself, as executor or administrator of property, to which his wife is entitled to a distributive share, it is not a reduction into possession of the wife's interest, so as to vest it in him, and if he dies before actual division be made, she takes by survivorship.

The same doctrine is affirmed in *Wallace vs. Talliaferro*, 2 *Call. Rep.* 376. Thus it appears, that so strong are the guards which the Courts have thrown around this right, that even in cases where

actual reduction into possession has taken place, if the possession can be referred to any other intent, than that of appropriating the property to the use of the husband, as such, the Courts preserve it to the wife.

But a case more directly in point, is that of *Schuyler vs. Hoyle*, 5 *Johns. Ch. Rep.* 196. Mrs. Schuyler was one of the heirs at law of Gewitt Fisher, who died intestate, abroad, leaving a large personal property. Schuyler, in right of his wife, with all the other distributees, joined in a power of attorney, to N. J. Bisscher, authorizing him to take out letters of administration upon the estate of the decedent, to collect the estate, and to pay over to each of them their respective portions. After Bisscher had obtained the letters, collected the funds, and actually paid over part to the husband, the latter died—a very large portion still remaining in the hands of N. J. Bisscher, the administrator. The wife of Schuyler claimed the balance as her property, by right of survivorship; and the heirs at law of Mr. Schuyler, claimed it as theirs, on the ground that the distributive share had vested absolutely in him. The question was argued at great length, and all the earlier English authorities cited. Chancellor *Kent*, after a full review of all the cases, said: " There remains no doubt, in my mind, that the wife was entitled, as survivor, to all that portion of her distributive share, which remained in the hands of the administrator of Mr. Fisher, at the time of her husband's death." He added, " we should act in contradiction to the whole course of decisions, if we were to consider the share of the wife, before it passed out of the hands of the administrator, as being reduced to the husband's possession."

A distinction was once supposed to exist between choses in action, accruing *before and during* coverture; and while it was admitted, that the rule was well settled as to rights of the former description, it was claimed that the latter, situated as this is, vested absolutely in the husband. But this distinction can neither be supported upon principle or by the adjudged cases.

Mr. Clancey, in his treatise on *Husband and Wife*, 4, says: " The choses in action, accruing to the wife during coverture, as well as those belonging to her at the time of the marriage,

are the husband's property, only conditionally, that is, provided he reduce them into possession in his life time, and if he do not, and he should die first, then she would take them by survivorship :" and in support of this position, see *Garforth vs. Bradley*, 2 *Ves. Lim.* 676. *Elliot vs. Collier*, 1 *Wilson*, 618. *Wildman vs. Wildman*, 9 *Ves.* 175. *Baker vs. Hall*, 12 *Ves.* 497. *Richards vs. Richards*, 2 *Barn. & Adolph*, 447. *Nash vs. Nash*, 2 *Madd. R.* 133. 1 *Dane's Abr.* 342, 344. *Deupree vs. Jackson*, 16 *Mass. R.* 480. *Deane vs. Richmond*, 5 *Pick. Rep.* 468.

It is well settled in England, that no distinction exists, as to the rights of survivorship by the wife, between those choses in action that accrue before, and those that accrue during coverture ; and the same doctrine is now distinctly recognized in New York, Pennsylvania, Virginia, South Carolina and most of the States of the Union. It has had the sanction of Lords *Hardwicke* and *Tenterden*, Chief Justice *Marshall*, Chancellor *Kent*, and many of the most eminent Jurists, at home and abroad.

But it is argued that, notwithstanding the revocation of the will in this case, that the division of the property, under it, will be ratified.

We cannot subscribe to this position. For many purposes, we admit that the acts done by an executor or administrator, *de facto*, in the due course of administration—such as the payment of debts, &c.—will be affirmed, notwithstanding, the authority under which the representative acted, is subsequently annulled ; but here are no innocent purchasers, whose title is sought to be disturbed. If so, Equity perhaps, would restrict the distributees to the proceeds of the property, in the hands of the trustee, and protect the *bona fide* purchaser. The contest is between legatees, who took under a will which has since been set aside and vacated, and the administrator. That the latter had the right to recover this property for distribution among the heirs at law, there cannot, in our minds, be a shadow of doubt.

We are asked whether a sale, by the administrator of Hodges, of Jane and Hannah, before the revocation of the will, would not have divested the estate of Hale of the title to this property ? Suffice it to say, that no such fact exists, and if it did, the ques-

tion of right would be the same, whether the administrator of Hale could follow the property itself, or had to look to the representative of Hodges for the proceeds. In no event could the estate of Hale, or Mrs. Stallings' right of survivorship be defeated.

It is suggested that the equity of this case is with the estate of Hodges; because, otherwise his children, who are the grandchildren of the ancestor from whom this property descends, will be entirely excluded from the inheritance. Admit this to be true, it goes to their mother, the daughter of Hale, to whom, by the laws of nature, it rightfully belongs. We never love equity more, than when in the full exercise of its paternal and most beneficent jurisdiction, it interposes to protect the rights of a *feme covert*, from the almost absolute power which *the law* gives the husband over the property of his wife. The contest here, is between the mother and her present husband, and the children of the former marriage; but the principle is the same if the issue had been between the widow as survivor, and the creditors of her bankrupt husband's estate, the same decree which would award this property to the children of Hodges, would sink the patrimony of Mary Ann Hale, under other circumstances, in the common vortex, to satisfy the debts of her insolvent husband's creditors.

But again: if Mary Ann Hale was advanced by her father, according to the custom of the country, when she intermarried with Hodges, then the first set of children get the whole of this, except the child's part going to their mother; and in this way, probably will receive more of Hale's estate, the common ancestor, than will the second set of children by Stallings—if, indeed, there be any.

In any view of this case, then, it seems to me that all the equity, as well as the law of it, is with Mrs. Stallings; and the Court are of opinion that the plaintiff in error has failed to sustain his exceptions, and that they must be disallowed.

Judgment affirmed.