MONTANA R'Y CO., appellant, *v.* WARREN AND OTHERS, respondents.

RAILROAD COMPANIES — *Proceedings to condemn lands — Competent testimony.* — In proceedings for condemnation of land for a railroad right of way, it is not essential to the competency of witnesses as to the value of the land that they should have bought or sold such land or similar property, or that their opinion should be based upon values realized on actual sales.

SAME — *Mining prospect — Market value, how ascertained.* — A mining prospect upon which shafts have been sunk, — one forty-one feet, another twenty feet, — but which has produced no return, has a market value, and such value is to be ascertained, in proceedings for condemnation of the claim for railroad purposes, under the same rule as is the value of other property; and testimony as to the value is not necessarily based upon sales of the same and similar property.

SAME — *Value as town lot.* — In proceedings for the condemnation of a mining claim for railroad purposes the owner may prove the value of

the land for town-lot purposes, whether built upon or not, in addition to proving its value as a prospect, but his recovery is confined to the value for one or the other purpose.

Measure of Damages.— The owner has the right to obtain the market value of the land, based upon its availability for the most valuable purposes for which it can be used, whether so used or not.

Conflicting Testimony.— Where there is conflict of testimony the court is bound by the finding of the jury.

*Appeal from Second District, Silver Bow County.*

The facts are stated in the opinion.

Samuel Word and W. W. Dixon, for the appellant.

Knowles & Forbis, for the respondents.

Bach, J.    This action was commenced by a petition, upon which commissioners were appointed to assess the value of certain lands lying in Silver Bow county and belonging to the respondents, over which lands the appellant sought to obtain an easement for the purpose of constructing a railroad.    The land mentioned in the petition was a mining claim, known as the "Nipper Lode,"—a claim undeveloped, but upon which there were several shafts, one forty-one feet deep, another twenty feet deep.    In fact the property was of that description generally known as a "prospect."    The commissioners made their final report, from which the respondents appealed to the second judicial district court in and for the county of Silver Bow.    The case was heard in that court before a jury, which found a verdict for the respondents herein for the sum of $7,000.    A motion for a new trial was heard, and an order was made denying the same; from which order, and from the judgment entered upon the verdict, an appeal was taken to this court.

There are assignments of error in the statement which are not referred to in the appellant's brief, and which will therefore not be considered by this court.    Those relied upon are as follows:

1. That there was admitted in evidence the opinion of

witnesses as to the value of the land, which opinion was
not based upon sales of the same or of similar property.
The witnesses whose opinion was so given had lived for
many years in the neighborhood of the Nipper lode.　They
knew its character and the character of adjacent property,
and had bought and sold property of the same description
in that neighborhood.　The well-settled rule of law is that
value of real estate may be proved by witnesses other than
experts.　In newly-settled communities there could be no
experts as to the value of real estate.　The value of lands
may be proved by the opinion of witnesses who know the
character of that land, its availability, fertility, situation,
and the character of similar and adjacent property.

A witness as to the value of property need not to have
been engaged in buying or selling the same.　1 Suth. Dam.
798; 3 Suth. Dam. 463, and cases cited in note; *Railroad
Co.* v. *Bunnell*, 81 Pa. St. 414–426; Sedg. Dam. 696, 697;
*Railroad Co.* v. *Pearson*, 35 Cal. 247–261; *Robertson* v.
*Knapp*, 35 N. Y. 91.

In the case last cited farmers were called as witnesses to
testify as to value of lands. The court say: "The value of
land in the vicinity is usually understood by all of the resi-
dents of a farming neighborhood, without respect to occu-
pation.　I can perceive no objection to the competency of
the evidence objected to."　See, also, Lawson, Exp. Ev. 436,
and numerous cases cited in the note.　It is there remarked
that only one state holds a contrary doctrine.　This point
naturally recurs in the other assignments of error.

2. The appellant claims that the evidence is insufficient
to justify the verdict, and that it is against the law, because
the Nipper lode was an undeveloped mining claim, which
had produced no return, from which no ore had ever been
taken, which was a mere prospect; and that consequently
its value was a speculative value only.

It is admitted by both parties that the true measure of
damages is the difference between the market value of the
property before and after the construction of the road.

The only questions are whether a prospect has a value that may, in law, be called a market value; and, if so, whether there is proof in this case of any market value. Has a "prospect"— an undeveloped mine — any market value? A full, positive answer to that is that prospects are sold in the market every day. Certainly, property so sold has a market value. The records of Silver Bow county will probably show more transfers by sale of property, such as is known as " prospects," than of any other kind of real estate. They are frequently sold upon execution, foreclosure and partition sales. They are the subject of daily litigation in our courts.

The witnesses Tibbey and Clark were called by the appellants. Tibbey says that the Kanuck mine was a prospect when $3,000 were paid for a half interest therein. The Kanuck was a small claim, with shafts no deeper than those upon the Nipper lode. He says $15,000 were paid for the Adventure claim when it was a prospect. Clark bought the Steward lode when it was a prospect. Those lodes had a market value. The record shows that portions of the Nipper lode had been sold.

Does the fact that the Nipper lode had produced no returns justify the legal conclusion that that property has no legal value, as is claimed by appellant to be the rule of law? A vacant lot in a large city " produces no returns." Any returns therefrom in the future must be a matter of speculation,— a speculation depending, among other things, upon the nature and size of the house which is still to be built, and the rent that can be obtained from a lease thereof, if it ever can be leased. If we should apply, in such a case, the rule invoked by appellant, there would be no value assignable to a property which, as a matter of fact, may be immensely valuable. What, then, is the value of such a lot? It is its market value,— the price which it would bring in a fair market,— which price may be established by competent witnesses who know the character and situation and usefulness of that property. See cases cited above.

Under certain circumstances a stream of water flowing through land makes that land valuable, because of the power to be derived therefrom, or because of the possibility of irrigation, as in this country. There may be no mill. There may have been no attempt to use that water for the purposes of irrigation. Still those are qualities or characteristics which may, under certain circumstances, enhance the present market value of that property. The question is not what would be the value of that property with a mill, or when irrigated and cultivated. That would be speculation. The question is, what effect have these circumstances upon the opinion of the community? How do they affect the market value? A man may have property well suited to a certain purpose,— such as a mill site, or as a farm, or as a residence or store, or as a mine,— and he may refuse to use it for any one of those purposes to which it is best suited. Still he may sell it in open market to a purchaser whose opinion of its present market value is based upon the future use to which it may be put. Still he may claim, in any proceeding to condemn that land, the market value thereof, as that value is fixed by the public for those purposes.

The difference between such a valuation and speculation seems clear. Land never used by its owner for any purpose is sought to be condemned. The fertility of the soil is one of the characteristics or properties of that land. It has never produced any returns; but there is no attempt to prove future productions. They are speculative. The fertility of the soil is a fact,— a fact which in some cases may add great value to the property, and may be one of the constituents of the market price. See *Boom Co.* v. *Patterson,* 98 U. S. 403. The court say (page 407): "In determining the value of land appropriated for public purposes, the same considerations are to be regarded as in a sale of property between private parties. The inquiry in such cases must be, what is the property worth in the market, viewed, not merely with reference to the uses to which it is at the

time applied, but with reference to the uses to which it is plainly adapted; that is to say, what is it worth from its availability for valuable uses? Property is not to be deemed worthless because the owner allows it to go to waste, or to be regarded as valueless because he is unable to put it to any use. Its capability of being made thus available gives it a market value which can be readily estimated." And the court cite with approval *Young* v. *Harrison,* 17 Ga. 30, in which case the value of farming land at a bridge site was allowed to be proved.

In *Boom Co.* v. *Patterson,* just above cited, the value of land on account of its availability for building a boom across a river was allowed to be proved. In the one case there was no bridge; in the other there was no boom. The value of those lands, if a bridge or boom was built, was a matter of speculation; but the present market value of those lands was more or less dependent upon the fact that they might be put to such uses. That was fact. See, also, the other authorities in the case of *Boom Co.* v. *Patterson.*

So with a " prospect." It certainly has value in the market. What is the characteristic of the prospect? If ore has been found, that fact is an element of value. It is the " fertility " of that piece of property. The value will increase as the prospect becomes more developed; but, as soon as a vein of ore is found in land in a mining district, it places a market value upon that land, greater or less, owing, as in all cases, to circumstances. That fact is as certain an element of price as is the fertility of the soil, the situation, chances for a mill site, or, in case of a well-developed mine, the possibility of future production of ore. In what respect does a prospect differ from a mine, except the fact that ore has been taken from the latter in large quantities? When does a prospect become a mine? Can it be said of a mine that it will continue to produce valuable ores with any greater certainty than it can be said of a well-developed prospect that it will produce valuable ores? Future profits are a matter of uncertainty in the one case as well

as in the other. In fact, the only distinction is that the mine is poorer than it was as a prospect because of the extraction of valuable ore once contained therein. Land adjacent to a well-known mine has a market value greater or less, depending whether it lies on or off the vein. In one case its present value depends upon its mineral character; in the other case, upon its adaptability for a dump, or for building purposes. As has been already said, a prospect is no more a matter of speculation than is a mine from which ore has been taken. The future of each is equally uncertain. The value of each is to be ascertained in the same way, viz., under all the circumstances, what is the market value?

In *State* v. *Moore*, 12 Cal. 56, the court say: " There is no force in the objection that the value of a mining claim, which depends upon the amount of precious metals it contains, must necessarily be left to conjecture. The universal standard of value is the amount of money which can be realized by a sale of the property, and this will apply to mining claims as to other lands. Sales and hypothecations of mining claims are of every day's occurrence, and we apprehend their value can be ascertained with sufficient accuracy."

In our opinion, mining prospects have a value, which is to be ascertained under the same rule as is the value of other property.

Appellant cites the case of *Searle* v. *Railroad Co.* 33 Pa. St. 57. We think the case does not sustain the rule as stated by appellant. In that case the judge, at the trial term, charged the jury as follows: " What is the value of this land? We refer you to the testimony. This value has been given regarding it, both as agricultural and *coal* land. *It is worth more for the coal under the ground* than for the mere surface. . . . We do not see why the value of the land, as it is, with the coal under it, estimated comparatively with the whole tract, is not the true subject for the consideration of the jury." See page 59. Now, it is evident that

the value of that land, as coal land, was in evidence. The owner of the land then wished to prove further " that there was over an acre of coal under the road, worth $4,000 " (see page 63); and that was the error complained of. The appellate court say (page 64): " The jury were permitted to find, in favor of the plaintiffs, *the full value of the land, as coal land.*" Then, in relation to the $4,000 worth of coal, the court held there was no error. Page, 64. " It would require us to ascertain the possible value of the products of the land in order to get at the value of the land itself. . . . It is easier to value the land directly than thus." Then the court say (page 64): " Though we might have the most accurate calculation of the quantity of coal in the land, yet, without knowing exactly the expense of bringing it to the surface and carrying it to market, and the amount likely to be lost in mining and conveying, and the times in which it would be brought out, and the market prices at those times, the quantity will not help us to value the land." It would seem that there was another reason for rejecting such evidence. To admit such evidence would necessarily allow the value of the coal to be twice estimated, once as an element of the value of the land and again as to its own value. However, the only point in that case was whether the value of the coal itself could be proved, and the court held that it could not. But the court did not disapprove of the charge of the judge below, that the jury could find the value of the land as coal land. It indirectly approved of that rule. Yet, although the value was proved as of coal land, in the statement of facts we find that " the plaintiff's ground had been used for agricultural purposes; no mines having been opened on the land." The case clearly sustains our position, that mining prospects, whether of coal, silver or gold, have a market value, and that that value is to be ascertained as in other properties.

But appellant claims that the testimony as to the value must be based upon sales of the same or similar property.

It is not necessary for us to decide whether or not evidence in chief may be given as to sales of the same or similar property. The price realized upon a sale is certainly one of the grounds upon which opinion may be based; but it is not the only ground. Witnesses who know the property, and are familiar with the uses to which it may be put, can give their opinions as to the market value. The witnesses called by respondent had been living in the neighborhood of this property for many years, and during that time had been engaged in mining, and had bought and sold mines and prospects. They were competent to give their opinions. See cases already cited.

To establish such a rule as that stated by appellant, that actual sales of the same or similar property are the only legal test of value, would allow the condemnation of immensely valuable property at a nominal price only. Many of our most valuable mines stand isolated and alone; the property adjacent has never been sold; the mines have not been sold for years; and, following the rule invoked by appellants, those mines could be condemned for public purpose at the nominal value of a dollar. It is evident, at least, that such a rule could not apply to newly-settled and sparsely populated countries such as this.

Counsel for appellant have selected certain portions of the testimony of the respondent's witnesses, given upon cross-examination, in order to show that their evidence was "mere guess-work." It would be a rare case where able counsel could not, on cross-examination, lead a witness to make some such statement. The better rule is to ascertain from the whole testimony whether or not the well-founded opinion of witnesses, or "guess-work," is given. In this case it appears from an inspection of the whole record that the opinions which were given were based upon the requisite facts,— the description, the character of the land in question, and of property adjacent thereto.

The appellant also relies upon this: that the court charged the jury that the opinions of witnesses as to value

must be based upon the sale or offers to sell the same or similar property; that the jury disregarded this instruction; and that, therefore, the verdict must be set aside, whether the instruction stated the true rule or not, because juries cannot disregard instructions given by the court. As matter of fact, each of the witnesses had knowledge of such sales,— sales of the same and of similar property. Some of the latter was at considerable distance from the Nipper lode, but it was not so far distant that this court can say that it formed no test of the value of the Nipper lode. Whether or not such land was similar to the Nipper lode is a question involving, to a great extent, the discretion of the judge presiding upon the trial in the court below. See *Benham* v. *Dunbar*, 103 Mass. 365.

Respondent was allowed to prove the value of the land for town-lot purposes. He had the right to do so, whether he had built upon it or not. As we have seen, the question is not to what use the land had been put. The owner has a right to obtain the market value of the land, based upon its availability for the most valuable purposes for which it can be used, whether or not he so used it. See cases already cited.

The court instructed the jury that the respondent could not recover the value of the land for both purposes, and we cannot presume that the jury disregarded the instruction, for it does not so appear from the testimony.

The remaining point is that of prejudice or passion. The verdict is not for a sum larger than the smallest amount given in the evidence for respondent as the difference between the market values of the property immediately prior to and after the taking. The verdict is larger than the largest sum fixed by appellant's witnesses. But there is a conflict of testimony, and this court is bound by the finding of the jury. The witnesses for appellant, moreover, admit that they never examined the property as mining property; that when they looked at it snow was upon the ground; that they never had assayed any of the ore taken

therefrom. But the most important conflict of testimony was in this: that respondent's witnesses testify that, in their opinion, the vein of the Anaconda mine runs through the Nipper ground, while appellant's witnesses say, in their opinion, it does not; but they admit that if it does so run into the Nipper ground, it would add much to the value of that claim. There is an important conflict of testimony, and we cannot say that the jury disbelieved respondent's witnesses.

Those are all the errors complained of and relied upon in appellant's brief.

The transcript in this case contains one hundred and forty-three pages (type-writing) of testimony, which is a *verbatim* copy of the stenographer's notes. The questions and answers are not reduced to narrative form in any instance. Much of the testimony has no application to the points relied upon. There appear upon the record questions which were withdrawn after objections thereto had been made. It is certainly apparent that it is not such a record as should be filed in this court.

There being no error, the judgment and the order denying the motion for new trial are affirmed, with costs.

*Judgment affirmed.*

Chief Justice WADE dissenting — McLEARY, J., concurring.