# CHARLESTON.

MONONGAHELA WEST PENN PUBLIC SERVICE COMPANY *v.* MONONGAHELA DEVELOPMENT COMPANY

(No. 5441)

Submitted March 2, 1926.   Decided March 9, 1926.

1. EMINENT DOMAIN—*If Tract of Land Has Been Laid Out in Lots, and Has Lost its Continuity as Tract, Lot, and Not Tract Becomes Basis of Valuation in Condemnation Proceeding.*

   If a tract of land has been laid out in lots and has lost its continuity as a tract, then the lot and not the tract becomes the basis of valuation in a condemnation proceeding. (p. 173.)

   (Eminent Domain, 20 C. J. § 190 [Anno].)

2.  SAME—*Platting Tract Into Lots and Streets, Staking Lots, and Marking Streets, do Not Necessarily Destroy Integrity of Tract so as to Make Lot Basis of Valuation in Condemnation Proceeding, But Some Further Act of Owner Whereby He Treats Lots as Independent Units is Necessary.*

The platting of a tract into lots and streets, and the staking of the lots and the marking of the streets, do not necessarily destroy the integrity of the tract. Some further act on the part of the owner is requisite, whereby he treats the lots as independent units. (p. 173.)

(Eminent Domain, 20 C. J. § 190.)

3.  SAME—*As Long as Unity of Tract Platted Into Lots and Streets is Maintained, Jury in Condemnation Proceeding May Consider its Adaptability to Lot Purposes, But it is Tract as Whole and Not Lots Into Which it Might be Divided That Should Be Valued.*

So long as the unity of a tract is maintained, the jury in such proceeding may take into consideration its adaptation to lot purposes; but it is the tract as a whole and not the lots into which it might be divided, that should be valued. (p. 175.)

(Eminent Domain, 20 C. J. § 229.)

4.  SAME—*If Land Sought to be Taken is Valuable for Two Purposes, and Use for One Excludes Use for Other, Only Value for One Use May be Recovered.*

If the land sought to be taken is valuable for two purposes, and the use for one purpose excludes the use for the other, only the value for one use may be recovered. (p. 177.)

(Eminent Domain, 20 C. J. § 228 [Anno].)

5.  SAME—*Instruction Directing Jury to Consider Such Prospective Damages to Land as Are Natural, Necessary and Reasonable Incidents of Work to be Constructed and Capable of Ascertainment at Time of Construction Should Limit. Their Consideration to Damages Appearing From Evidence.*

An instruction directing the jury to consider such prospective damages to land as are the natural, necessary and reasonable incidents of the work to be constructed and capable of ascertainment at the time of construction, should limit the consideration of the jurors to such damages as appear from the evidence. (p. 176.)

(Eminent Domain, 20 C. J. § 409.)

101 W. Va.

6.  SAME—*Rule in Prior Case That Evidence of Prices ·Paid Others for Land and Damages to Residue, Though Located in Same Vicinity, is Not Proper Evidence Does Not Apply if Sales of Other Rights of Way Were Result of Free Exercise of Intelligent Judgment, and Were Not Influenced by Fear of Litigation.*

The rule announced in point 12 of the syllabus in *Ry Co.* v. *Coal Co.*, 75 W. Va. 423, does not apply to sales of other rights of way in the same vicinity as the expropriated land, if such sales were the result of the free exercise of intelligent judgment, and were not influenced by fear of litigaton.  (p. 171.)

(Evidence, 22 C. J. § 855.)

(NOTE:  Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Error to Circuit Court, Monongalia County.

Eminent domain proceeding by the Monongahela West Penn Public Service Company to condemn a right of way across the land of the Monongahela Development Company.  After both parties excepted to a report of commissioners assessing damages, a judgment was entered on a verdict for the defendant, and the applicant brings error.

*Judgment reversed; verdict set aside; new trial awarded.*

*James A. Meredith* and *Cox & Baker*, for plaintiff in error.
*Minter L. Wilson* and *Donald G. Lazzelle*, for defendant in error.

HATCHER, JUDGE:

In March of 1923 the Monongahela Development Company, the defendant herein, acquired about 65 acres of land, in Monongalia County, situate two miles from the West Virginia University, on the hard surface road between Morgantown and Star City.  The purchase price was $36,000.00.  In September of the same year the defendant paid $3,000.00 for a narrow strip which added little to its acreage, but materially increased its frontage· on the Star City road.

The Monongahela West Penn Public Service Company, the applicant herein, filed a petition in the circuit court of said county, in October of 1923, for the purpose of condemning a right of way across the land of the defendant, fifty feet in

width and nine hundred and seventeen feet in length, upon which it proposed to erect towers for carrying high power electric wires.

The taking of this easement was opposed by the defendant, but the circuit court adjudged that the case was one in which the applicant had the legal right to condemn the right of way described in the petition, and appointed commissioners to ascertain just compensation, etc. The commissioners returned a report of December 17, 1923, in which they awarded the defendant .$8,900.00. Both the applicant and the defendant excepted to the report. On December 20, 1923, the applicant paid into court the said sum of $8,900.00 and took possession of the right of way. The case was tried before a jury in 1925, when a verdict of $11,150.00 was rendered in favor of the defendant. In answer to certain interrogatories the jury found that $5,500.00 was just compensation for the right of way taken by the applicant, that $5,600.00 was allowed as damages to the residue of the land, and that nothing was allowed on account of fear of danger to persons or property.

The case is here upon petition of the applicant.

The evidence discloses that a survey of the 65 acres was made in April, 1923, and in May, 1923, plats were prepared showing a division of the tract into two separate sections entitled "Suncrest" and "Fairfield" respectively. Approximately 17 acres were included in the Fairfield section, and the balance of the tract was attributed to Suncrest. The strip taken by the applicant passes through Suncrest only. Suncrest was subdivided into about 172 lots, and 132 lots appear on the plat of Fairfield. A public lot sale was held of Fairfield lots in September, 1923, when about 72 lots were sold. The price received amounted to approximately $2,700.00 an acre. Prior to December 20, 1923, the lots shown on the plat of Suncrest had been staked and the streets marked and partly graded, but seemingly no lot had at that time been sold in that section. It does not appear whether the plat of Suncrest had been put on public record, or whether there had been any other dedication of its streets to public use. In the early part of 1924 the defendant made another plat of Suncrest. Several streets were changed from the original plan

and the number of lots was largely increased. Witnesses for defendant testified that the 65-acre tract was purchased for the purpose of developing a suburb of Morgantown; that the tract is generally smooth and very beautiful for a suburban section; that the most advantageous use to which the land in Suncrest could have been applied on December 20, 1923, was for building purposes; that the easement taken by the applicant embraced a fraction over an acre, and would be worth about $50.00 for agricultural purposes. The opinions varied as to the amount of compensation due the defendant. The lowest estimate made by defendant's witnesses of the value of the acre taken was $14,000.00, the highest $23,000.00. The lowest estimate of damages to the residue was $17,000.00, and the highest $69,000.00  Opinions were also given of the value of the tract before the taking and its value afterwards. All such estimates, whether as to compensation, damages, or tract valuations, were apparently based on lot values. One of defendant's witnesses said ''I have been in the lot sale business long enough to not kid myself into figuring lot property on a farm basis.'' Other witnesses specifically estimated damages on a ''lot proposition'', or at so much ''per lot'', or to ''every lot in Suncrest'', or to ''each lot south of Rotary Street'', or to the ''balance of the lots''. No evidence was given of any increase in population in the neighborhood of Suncrest, of the establishment of any new industries there, of growth of Morgantown, or of anything whatsoever to make building lots in demand at Suncrest. There was no testimony of any inquiry concerning, or market for these lots. One of defendant's witnesses admitted that ''Surrounding this particular tract—were many hundreds of acres—as good as that''.

Witnesses for applicant placed the value of the land taken at from $2,000.00 to $2,500.00, and the damages to the residue at from $700.00 to $2,000.00. Two of applicant's witnesses estimated the total damage to defendant at about $6,000.00.

One of defendant's witnesses testified on his examination in chief that in his judgment a just compensation to defendant for the easement actually taken by the applicant ''would run about $16,000.00'', and that damages to the residue of the

property of defendant was $69,000.00. On cross examination this witness was asked what he considered the fair market value of the easement, "excluding any effect its taking may have had upon the rest of the land." He replied "It is an impossible question in my opinion." The same question was then repeated to the witness, was objected to by defendant, the objection sustained, and exception noted. Upon re-direct examination this witness was again asked to give his "judgment and opinion" of the market value of the land over which the easement was taken "to include only acreage under said easement". This question was objected to by applicant, the objection overruled and exception taken. The witness again answered $16,000.00. This witness had fixed two separate valuations; one of compensation for the land directly taken, the other of damages to the land not included in the easement. Upon these valuations the applicant had the right to fairly cross-examine him. If, as the witness intimated, he could not exclude from his estimate of the fifty foot strip the effect its taking had on the rest of defendant's land, then he was by his own admission unqualified to express an opinion on the separate value of the land taken for the easement and it was error for the court to permit him so to do.

In admitting a map of Fairfield in evidence identified as Funderburk No. 4, and not proved to be correct, the trial court said in effect that the map could be introduced to aid the jury in understanding the location of the Fairfield lots, and that evidence of sales of the Fairfield lots would be received for the purpose of showing the actual value of the lots at the date they were sold. Both the admission of the map and the remarks of the court are alleged as error. If the introduction of the map was error because its correctness was not proven, it was harmless error. We see no error in the remark of the court. The Fairfield lots were adjoining the Suncrest lots. The sale of those lots was held just three months before the taking of the Suncrest property. The price they actually brought is likely the best evidence of their value at the date of sale. Sales of property in the same neighborhood as land condemned and not too remote in time are admissible on the question of land values.

The applicant offered to prove numerous sales of easements fifty feet wide, upon the same conditions and under the similar circumstances, and for the same purposes as sought in this proceeding, at a price of less than $1,500.00 per mile, but was upon objection by defendant denied by the trial court. ·The defendant says that the offer was properly rejected (a) because it conflicted with the rule announced in *Railroad Co.* v. *Coal Co.,* 75 W. Va. 423, and (b) because the offer did not fix the time of such sales. In the case referred to, it was held that evidence of prices paid others by the contemnor was inadmissible. This holding was based on Lewis On Eminent Domain, Sec. 667, which contends that such purchases are in the nature of a compromise. ''The fear of one party, or the other to take the risk of legal proceedings ordinarily results in the one party paying more or the other taking less than is considered to be the fair market value of the property.'' Without considering the effect of *Ry. Co.* v. *Heirs,* 79 W. Va. 287, on this rule, suffice it to say that the very form in which that evidence was tendered precludes the rule. *Similar circumstances and conditions* would imply vendors as fearless of litigation as is the defendant in this proceeding. The offer of applicant is subject, however, to the second criticism of defendant, and we cannot say that the trial court erred in its rejection in the absence of information as to the time of such sales. The admissibility of such evidence depended on the proximity of the sales to December 20, 1923. We cannot infer that they were near that date.

Among other questions defendant's witnesses were permitted to answer, was one which called for an opinion as to just compensation to defendant for the easement ''together with damages to the residue of the land if any'', etc. The applicant says that the phrase *residue of the land* is too indefinite, in view of the fact that lots had been sold in Fairfield, that such lots were parts *of the land,* and if they were damaged by the taking of the easement, the defendant was not entitled to such damage. Several instructions given at the instance of defendant are subjected to the same criticism. The defendant contends that while the phrase ''residue of the land'' appears indefinite, the jury well understood from the

maps and from all the evidence that no damages were sought for the Fairfield property. The defendant's contention is plausible, but it is better practice to make both questions and instructions so precise as to leave no room for misapprehension. We have specifically held that it is not error to propound to a witness a question in the form of the one complained of. See point 8 of the syllabus of *Railway Co.* v. *Coal Co., supra.*

Relying on the settled law, that purely conjectural or speculative damages may not be recovered, the applicant charges error to evidence of the defendant that (a) purchasers generally were impressed with the idea that a transmission line erected on steel towers was more dangerous than one on wooden poles, and (b) that trees grew in that locality to the height of 120 feet. The evidence of the impression held by prospective purchasers was evidence of a mental condition which actually existed and hence was evidence of a fact, and not subject to the above rule. It was stated by counsel that the inference intended from, and the argument made as to the height of trees, was that some lot owner might some day plant a tree which in the lapse of time might grow tall enough and in some way come in contact with the wires of the applicant and thereby become dangerous to persons or property. If such inference was intended and such argument made, they are subject to the rule against mere speculation and possibility. However, we note an instruction given the jury directing it not to consider speculative or conjectural damages. Consequently the error was more likely fanciful than real.

The applicant's brief criticizes several of the instructions given on behalf of the defendant, and in argument its counsel arraigned particularly defendant's instruction No. 10, which is as follows:

> "The court instructs the jury that in ascertaining the damages, if any, to the Monongahela Development Company because of the taking of an easement or right of way across the property of the Monongahela Development Company by the Monongahela West Penn Public Service Company, you may consider prospective damages to the residue of the land that are the natural, necessary or reason-

> able incidents of the work constructed or to be con-
> structed and capable of ascertainment at the time
> of its construction.''

Counsel for defendant seek to justify this instruction by *Traction Co.* v. *Windom,* 78 W. Va. 390, wherein it is stated that the sum awarded as compensation should cover ''past, present and prospective damages to the residue, that are the natural, necessary and reasonable incidents of the work and capable of ascertainment at the time of the construction.'' The statement quoted is sound law, but in adapting it to an instruction counsel should have limited the *prospective damages* to such damages as from *the evidence* in the case were the natural, necessary or reasonable incidents, etc. Without being limited to the evidence, the members of the jury could easily infer from this instruction that they could consider such prospective damages as might occur to them individually, even though not proven by testimony or appearing from an observation of the work constructed. A somewhat similar instruction was condemned in *Power Co.* v. *Brotherton,* 90 W. Va. 155, as ''calculated to mislead the jury''.

Instruction No. 11 given on behalf of defendant informs the jury that it may consider the effect of the construction of the transmission line if they believe that such construction ''injuriously affected the streets of defendant''. Defendant's instruction No. 13 informed the jury that if it appeared in evidence that defendant was developing its Suncrest property as a unit for building purposes and that the construction of applicant's transmission line had damaged the whole residue of the property as shown on the Suncrest plat, then it was proper for the jury to consider the amount of damages to the whole residue thereof. Defendant's instruction No. 18 authorizes the jury to take into consideration the damages if any to the value of any lot in Suncrest, the frontage of which was shown by the evidence to have been destroyed by the applicant's transmission line.

A ruling on these three instructions involves a consideration of the effect on the defendant's property of platting it and laying it off in lots. Did this break up the integrity of the large tract? Did this resolve Suncrest into 172 separate

and distinct parcels of land, each independent of the other and related only by common ownership? Some decisions so indicate. "It is perhaps impossible to establish any rule applicable to such cases which will not be subject to criticism. But in respect to city property, in fact unoccupied, but which appears to have been platted or divided into blocks and lots, nothing more being shown, the property should be treated as lots or blocks, intended for use as such, and not as one entire tract. *Prima facie* that character has been given to it by the proprietor." *Wilcox* v. *Ry. Co.* 35 Minn. 439 (442); *Koerper* v. *Ry. Co.,* 42 Minn. 340; *Oregon Co.* v. *Taffe,* 67 Or. 102. We are not inclined to adopt this view. We think that something more must be done than merely platting and laying off a tract into lots, to cause the tract to lose its unity. Such a plat is evidence of the capacity of a tract to be subdivided into lots. *Ry. Co.* v. *Longworth,* 30 O. St. 108 (112). Platting a tract into lots and streets, and staking the lots and marking the streets show intention and preparation by the owner to subdivide his land. But such acts alone are merely tentative. Until the rights of another party intervene thereto, the owner can by his own volition, change or destroy the plat, pull up the lot stakes, obliterate the street markings, and continue the integrity of his tract. We do not mean to imply that a lot sale or a formal dedication of the streets is necessary in all cases to break the continuity of a tract. Declarations (not repudiated), offers to sell lots (not withdrawn), and other acts (while operative), by the owner, may sufficiently establish lot entity.

The separation of the 65-acre tract into two sections prior to December 20, 1923, is clearly shown, but the evidence does not fairly develop the situation at Suncrest on that date. A proper determination of that situation is necessary in this proceeding. A different measure of damages prevails if the unity of that section was then unimpaired, from what governs if its continuity was broken. In the latter case the defendant would be limited in this action to such residual damages as could be proven to the lots through which the fifty-foot strip passes. *Sharpe* v. *U. S.,* 112 Fed. 893; *Louisiana Co.* v. *Xavier Realty,* 115 La. 328; *Oregon* v. *Taffe, supra; Ry. Co.*

v. *Conley,* 84 W. Va. 489. "Where the owner of a tract of
land subdivides it and the plat is recorded, and where one
buys land previously so subdivided, the lots are subdivided
for all purposes, as if actually separated by real lines, and a
corporation seeking to condemn some of the lots, cannot be
compelled to pay damages to the remainder of the lots no
part of any one of which is taken." *Banning* v. *Tr. of South-
ern Ry. Co.,* 7 Ohio Dec., Reprint, 560. If the continuity of
Suncrest was unbroken on December 20, 1923, then defend-
ant is entitled to such damages as may have affected the en-
tire section. "The rule that where land is condemned, the
damages to other lands of the landowner from the taking
must be limited to the tract, a portion of which is taken, does
not prevent recovery of damages to the entire tract, where
the owner merely plats it on paper into lots and blocks, and
such rule does not limit the damage to the single block in
which the land is taken." *Ry. Co.* v. *Musgrove,* 169 Ala. 424.
If Suncrest was a unit on December 20, 1923, the defendant
and the court should have consistently treated it as a unit.
The entire section should have been valued as a unit and not
considered either in testimony or instructions (Nos. 11 and
18) on a lot basis. *Currie* v. *Ry. Co.,* 52 N. J. L. 381. "Where
the owner has platted on paper by lots and blocks a tract of
land, but the whole tract is made the basis as to injury or
damages for condemnation of a part of it as a right of way,
the tract should continue the unit basis in the estimation of
values, and should not be subdivided into numerous units for
the purpose of fixing values; hence it was error to allow con-
sideration of the lots as units and proof of the value of the
lots by the front foot; the proof should go no further than
the value of the land actually taken and the diminution in
value of the tract as a tract by the establishment of a right
of way thereon." *Ry. Co.* v. *Musgrove, supra.* "It is proper
to inquire what the tract is worth, having in view the pur-
poses for which it is best adapted, but it is the tract, and not
the lots into which it might be divided, that is to be valued.
*  *  *  The jury are to value the tract of land, and that
only. They are not to determine how it could best be divided
into building lots, nor conjecture how fast they could be sold,

nor at what price per lot.  A speculator or investor in de-
ciding what price he could afford to pay, would consider the
chances and probabilities of the situation as then actually
existing.  A jury should do the same thing.  They are not to
inquire what a speculator might be able to realize out of a
re-sale in the future, but what a present purchaser would be
willing to pay for it in the condition it is now in.  This is a
rule that is well settled and the court should have drawn the
attention of the jury to it so as to have left no room for un-
certainty on their part.  They should have been' told that they
had nothing to do with the subdivision of this tract, the price
of the lots or the probability of their sale; but that they were
to ascertain the fair selling value of the land before and after
the entry by the railroad company, in order to determine the
actual damage done to its owner.''  *Ry. Co.* v. *Cleary,* 125
Penn. 442 (452).  ''In determining the value of the land
actually taken you are to be governed by the fair market
value in December 1880.  What was the fair market value of
the land at that time for any purpose for which it might
reasonably be used in the immediate future?  Not, what would
lots sell for in the distant future if streets were opened and
lots offered for sale; nor, indeed is the price per lot a measure
of value either in the near or in the distant future.  That
would be too remote and uncertain—speculative; but what was
the land worth then in the market, on the 16th day of Decem-
ber, 1880, with reference to its availability for any purpose
to which it might be reasonably put by a provident, discreet
business man in the immediate future.''  *Watson* v. *Ry. Co.,*
57 Wis. 332 (353). approved the foregoing instruction.  The
above quotations illustrate concretely the abstract rule given
by our court that the value of land may be based on its
availability ''for all valuable uses to which it is adapted,
having regard to the existing business or wants of the com-
munity or such as may be reasonably expected in the near
future.''  *Ry. Co.* v. *Buskirk,* 57 W. Va. 417.  Juries should
be impressed that a land owner cannot in such case realize on
future possibilities except in so far as such expectancies
affect its present market.  He is entitled to a consideration
of all advantages which the land possesses, but it is the pres-

ent value alone of such advantages that must be determined. It would be manifestly improper to give to land as a present valuation a price which can actually be obtained only after a considerable period of time. "Compensation cannot be awarded on the basis that the land taken may be used for a particular purpose, unless it is shown that it is marketable for such purpose." *In re Daly* 45 N. Y. Supp. 785. See also *Power Co.* v. *Johnson* (Va.) 119 S. E. 253; *Boom Co.* v. *Patterson,* 98 U. S. 403; Lewis Eminent Domain, par. 706; and the exhaustive annotation commencing on page 405 L. R. A., 1917 A.

Defendant's evidence and instructions are not consistent with these views. Recovery is sought by the defendant on both a lot and a section basis. This cannot be allowed. "In proceedings for the condemnation of a mining claim for railroad purposes the owner may prove the value of the land for town-lot purposes, whether built upon or not, in addition to proving its value as a prospect, but his recovery is confined to the value for one or the other purpose." *Ry. Co.* v. *Warren,* 6 Mont. 275. Of course this rule would not apply where land was valuable for two purposes and its use for one purpose would not interfere with its use for the other. *Ry. Co.* v. *Forbis* (Mont.) 48 Am. St. Rep. 692. Suncrest as a unit and Suncrest as 172 independent lots are incompatible for the purpose of assessing damages.

It is claimed by the applicant that the amount of the verdict is excessive. With no evidence in the record of a demand for the Suncrest lots it is difficult for this court to understand how the work of the surveyor could increase its value per acre from $600.00 in March 1923 to $5,000.00 in December 1923. Does the plat of Funderburk rival in magic the lamp of Aladdin? Does the mere *fission* of a tract multiply its value? There must have been a market for these lots and the jury apparently saw evidence thereof when it viewed Suncrest. Then, too, the amount of the verdict is not so much greater than the damages fixed by some of the applicant's witnesses as to show conclusively that the jury was prejudiced.

Other errors are alleged by the applicant, but as a retrial of this case is necessary, we do not deem further comment thereon pertinent.

As heretofore indicated, the proper standard of estimation was not submitted to the jury either in the evidence or instructions. The verdict will therefore be set aside, the judgment of the circuit court reversed, and a new trial awarded.

*Judgment reversed; verdict set aside; new trial awarded.*