157 So.2d 168 (1963)
WILBUR J. CASEY AND KATHRYN W. CASEY, HIS WIFE, APPELLANTS,
v.
FLORIDA POWER CORPORATION, A CORPORATION, APPELLEE.
No. 3288.
District Court of Appeal of Florida, Second District.
September 13, 1963.
Rehearing Denied November 14, 1963.
Ben Krentzman and Richard T. Bennison of Krentzman & MacKenzie, Clearwater, for appellants.
S.E. Simmons, St. Petersburg, for appellee.
SHANNON, Judge.
The appellants were the respondents below and the appellee was the petitioner. The respondents were the owners of a 148 acre tract of land, and the petitioner sought to condemn an easement for a right-of-way, 262.5 feet wide, containing 14.5 acres, and running diagonally across the land, for the purpose of erecting four towers and a portion of a fifth, upon which to maintain a 230,000 volt transmission line. According to petitioner, at the trial below there were contrasting opinions of the experts as to the value that should be allowed, from *169 a high of $121,000.00 to a low of $58,110.00. The verdict was $64,000.00, plus an attorney's fee of $6,500.00. The appraisers appointed by the court appraised the property at $70,380.00. The respondents in this appeal posed three points, namely:
1. May the respondents introduce evidence as to the effect of the presence of such towers and power lines upon the fair market value of their property after the taking?
The petitioner has narrowed the question so as to base the same upon the effect of fear and unsightliness of the wires and towers in establishing depreciation of adjacent property not condemned.
2. Whether or not the respondents are entitled to have the jury consider evidence as to all factors which would affect the fair market value of their property and would reasonably enter into the negotiations of prospective purchases?
This is narrowed down by the petitioner to whether opinions as to values based in part upon immaterial or conjectural elements are proper for the consideration of the jury.
3. Should the jury be allowed to consider the testimony of respondents' expert witness concerning the characteristics of the transmission lines?
The petitioner asks whether or not it is error to reject the proffered testimony of an engineer relative to an alleged attribute of the line (blue corona) when it conclusively appears that the appraisal experts have not considered this element in any way in their opinions as to value.
The property is devoted to dairy and pasture purposes by the owners. The easement was obtained pursuant to the quicktaking procedure set out in Chapter 74, Fla. Stat., F.S.A., which chapter relates to the proceedings supplemental to Eminent Domain. We are solely concerned here with arriving at a just compensation insofar as this easement is concerned. The cases are replete with language which suggests that just compensation for an interest of this kind is the difference between the market value of the entire property immediately before the taking and its market value burdened with the easement. But, say the respondents, the court below struck all of the testimony of one expert witness and a portion of that of another expert witness. The testimony of both witnesses would tend to show that the presence of towers and power lines upon the property would result in a general reluctance on the part of prospective purchasers to purchase the land adjacent to the easement. This reluctance would be caused by the general appearance of the towers and lines and the apprehension of hazard that the towers and power lines would present. The lower court ruled, according to respondents, that such consideration was not proper in arriving at a computation of damages, and refused the requested instructions embodying the same. In maintaining that the presence of towers and power lines does diminish the market value in the eyes of a prospective purchaser, the respondents quoted from Board of Commissioners of State Inst. v. Tallahassee Bank & Trust Company, Fla.App. 1958, 100 So.2d 67. We do not think that this case is authority for their position, but they do cite a case from another jurisdiction, Hicks v. United States, 266 F.2d 515, (6th Cir.1959), where the court said:
"* * * From a financial standpoint the estimates by appellant's witnesses for incidental injury to the property from the power lines and towers constituted the main item of damages. Four qualified witnesses testified for appellant that the 113 acres had been substantially reduced in value by the presence of four steel towers 84 feet high and twin power lines each carrying 154,000 volts. It was shown that the power lines had reduced the desirability *170 of the northern 16-acre tract fronting on Highway 100 close to Nashville and admitted by witnesses for TVA to be suitable for suburban residential purposes. Clearly the injury done to the property by the presence of power lines and steel towers is not merely speculative."
From reading the above quotation from the Hicks case one would think that the law on this question is settled. However, the petitioner's view on this question is expressed in its exhaustive brief:
"The controlling question is whether, under the particular circumstances presented by the record, the opinions of Casey's experts were based in part upon speculation and conjecture and hence improper for consideration by the jury. Frequently presented to and decided by courts in other jurisdictions, it is of first impression in Florida. * * *"
And, says the petitioner, by the clear weight of authority, opinion evidence as to value in a condemnation case, based upon fear of a steel tower and high voltage transmission lines, is too speculative and conjectural to be considered as an element of damage to adjacent land. Petitioner cites Alabama Power Co. v. Keystone Lime Co., 1914, 191 Ala. 58, 67 So. 833, and numerous other cases. In the Alabama Power Co. case it is stated, in part:
"* * * If it be true that some people who have not grown accustomed to lines similar to that of appellant are afraid of this improvement, and that therefore they are not now willing to buy appellee's lands, the law can furnish to appellee no remedy therefor, and cannot regard depreciation created by such a cause as resting upon any substantial basis. * * * In allowing compensation, however, it cannot allow any compensation on account of any claimed depreciation of such remaining land which is due to the mere fears of some of the people, which are founded in reality upon their lack of knowledge of the real effect of the line, and which human experience shows is not justified by the facts. * * *"
The petitioner, in its brief, has set this case out as representative of the majority rule. Next, it sets out the intermediate rule, under which the cases reject the notion that mere general fear from the presence of a transmission line can be made the basis upon which to claim depreciation in the market value of adjacent land, modifying the majority rule as follows:
"* * * But * * * if such fears be reasonable, not speculative nor ill-defined, but founded on practical experience, and if such fears are entertained so generally as to enter into the calculations of all who propose to buy or sell, can it logically be said that they do not depreciate the market value of the property? If an owner cannot sell his property at as good a figure with this line across it as he could before, then his land may be depreciated on account thereof. * * *"
This view is represented by Dunlap v. Loup River Public Power Dist., 1939, 136 Neb. 11, 284 N.W. 742, 124 A.L.R. 400, and various other cases.
The petitioner then sets forth the minority rule, under which it has placed the opinion in Hicks v. United States, supra.
Insofar as the unsightliness of the steel towers, the petitioner again gives us the majority and minority rules, citing Nichols on Eminent Domain, 3d Ed., and a host of cases.
That a prospective purchaser of the land of the respondents will be so timid or so ignorant that he either will not buy at all or will offer less than the true value because of the transmission lines and towers is too highly speculative in regard to this particular land to be taken into consideration. This court, like the majority of other courts, recognizes the owners' right to full and just compensation; but *171 when a jury must base its award upon ignorance and fear, we must draw the line; such a basis cannot possibly result in fair and just compensation. This court will go with what the petitioner calls the majority rule and hold that no error has been made to appear in the ruling of the trial court. For authority on this point see 49 A.L.R. 702; 124 A.L.R. 407; 5 Nichols on Eminent Domain, 3d Ed., Sec. 16.103(1); and Institute on Eminent Domain, Southwest Legal Foundation, 1960 Ed., pp. 104, 105.
Point No. 2, as stated by the petitioner, questions whether opinions as to value based in part upon immaterial and conjectural elements are proper for the consideration of the jury. The question as stated by respondents leaves the door wide open as to the various factors which would affect the fair market value of property.
Respondents, in arguing this particular question, put emphasis upon their role in the transaction as that of an unwilling seller. The word "value" as used in the statute ordinarily means the amount which would be paid for the property on the assessing date to a willing seller, not compelled to sell, by a willing purchaser, not compelled to purchase, taking into consideration all uses to which the property is adapted and might reasonably be applied. See Root v. Wood, 1945, 155 Fla. 613, 21 So.2d 133; and City of Tampa v. Colgan, 1935, 121 Fla. 218, 163 So. 577. Therefore, in order to arrive at a fair value, it is necessary to have a willing buyer and a willing seller. In view of this, the courts have consistently warned against speculation and conjecture. See Board of Commissioners of State Inst. v. Tallahassee Bank & Trust Co., supra.
The record is quite clear as to what actually happened at the trial in this case. We quote from appellee's brief:
"* * * Confronted with this claim, Petitioner on redirect and without objection by Casey again sought Hunnicutt's opinion as to the effect of a power line upon adjacent property. In retrospect, and since the element of fear had already been excluded from the jury's consideration, Hunnicutt's reference thereto was perhaps technically irrelevant, however, Casey did not object or move to strike it, nor has he assigned the incident as error. The argument on this score sums up as follows:
"1. Casey opened the subject and is in no position to complain of the rebuttal. Atlantic Coast Line R. Co. v. Watkins, 97 Fla. 350, 121 So. 95.
"2. He did not object to any of Hunnicutt's testimony and thus laid no predicate upon which to assign error. Ross v. Florida Sun Life Insurance Company, Fla.App., 124 So.2d 892; Gainesville & Gulf R. Co. v. Peck, 55 Fla. 402, 46 So. 1019.
"3. The error, if any, is not the subject of any of Casey's assignments. Red Top Cab & Baggage Co. v. Dorner, 159 Fla. 538, 32 So.2d 321.
"4. The Court carefully enumerated the items remaining for the jury's consideration and since fear was not one of them, Hunnicutt's negative views on the subject could not possibly have influenced its deliberations.
"This Court will perhaps, in company with Petitioner, wonder why it was ever made. If Casey is correct on the first point, the argument is unnecessary and superfluous. If he is incorrect, error cannot be contrived from objections not made, assignments not presented or by some specious appeal to passion or prejudice."
While the parties have taken a good deal of space in their briefs to discuss this point, it is in a large part repetition of some of the language used in the discussion of the first point. The cases cited under *172 Point No. 1 almost all discuss the point here involved. We do not think that the respondents can complain as to the ruling of the trial court for the reasons given under the previous question.
Under Point No. 3 the respondents posed the question as to whether or not the jury should be allowed to consider the testimony of respondents' expert witness concerning the characteristics of the transmission lines. The petitioner puts the question as to whether or not it is error to reject the proffered testimony of an engineer relative to an alleged attribute of the line (blue corona) when it conclusively appears that the appraisal experts have not considered this element in any way in their opinions as to value.
The trial court rejected the proffered testimony concerning the blue corona. The testimony does not show that the blue corona is dangerous or displeasing to the aesthetic senses. The real estate experts did not mention it or even enter into any calculations about the phenomena. The respondents, with the burden of demonstrating error, do not even attempt to supply the link which would connect the blue corona with land value  in other words, relevancy has not been shown. The respondents simply failed to connect the phenomena with the depreciation in land value, and irrespective of Petition of Omaha Public Power District, 1959, 168 Neb. 120, 95 N.W.2d 209, and Pavlis v. Atlas-Imperial Diesel Engine Co., 1935, 121 Fla. 185, 163 So. 515, we fail to find that the respondents have pointed out any error to us under the heading of this question.
Affirmed.
STURGIS, WALLACE E., Associate Judge, concurs.
ALLEN, Acting C.J., concurs specially.
ALLEN, Acting Chief Judge (concurring specially).
I concur in the majority opinion affirming the lower court but do not concur in expressions of law set forth in said opinion.
The opinion, on page 170, states:
"That a prospective purchaser of the land of the respondents will be so timid or so ignorant that he either will not buy at all or will offer less than the true value because of the transmission lines and towers is too highly speculative in regard to this particular land to be taken into consideration. This court, like the majority of other courts, recognizes the owners' right to full and just compensation; but when a jury must base its award upon ignorance and fear, we must draw the line; such a basis cannot possibly result in fair and just compensation. This court will go with what the petitioner calls the majority rule and hold that no error has been made to appear in the ruling of the trial court. For authority on this point see 49 A.L.R. 702; 124 A.L.R. 407; 5 Nichols on Eminent Domain, 3d Ed., Sec. 16.103(1); and Institute on Eminent Domain, Southwest Legal Foundation, 1960 Ed., pp. 104, 105."
The Florida Power Corporation, in its excellent brief, sets forth what it calls a majority rule, an intermediate rule, and a minority rule. The majority opinion adopts the majority rule. I would prefer the intermediate rule.
I am not too sure, from the record, whether the lower court struck the testimony of the appellants' two expert witnesses because of its belief in the so-called majority rule, or because the experts were testifying primarily from their own personal feelings and not from a knowledge that a sufficient number of prospective buyers would not purchase the remainder of the appellants' property because of their fear and apprehension of power lines that were to be located on the property, and their dislike for the looks, etc., of high power lines strung so close to their property.
*173 Since it is primarily the duty of the trial judge to determine a witness' ability to testify as an expert by reason of special training, etc., and to give such weight to his testimony as, in the judge's opinion, the background of the witness indicates, (see Myers v. Korbly, Fla.App. 1958, 103 So.2d 215) I would go along in sustaining the lower court's ruling in this regard and, therefore, join in affirming the lower court.
However, the majority opinion, as will be seen from the part quoted above, states:
"* * * but when a jury must base its award upon ignorance and fear, we must draw the line; such a basis cannot possibly result in fair and just compensation. This court will go with what the petitioner calls the majority rule and hold that no error has been made to appear in the ruling of the trial court."
In the case of Alabama Power Co. v. Keystone Lime Co., 1914, 191 Ala. 58, 67 So. 833, it was held, in effect, that where a right of way for the erection and maintenance of towers, poles, and wires for the transmission of electricity is condemned, the owner may recover compensation for actual depreciation in the value of his remaining land, caused by the presence of the right of way; but that mere fears of people from the presence of high power lines on the right of way cannot be made a basis on which to predicate such depreciation or affect the amount of the recovery. This is the rule referred to by the appellee power company as the majority rule.
The intermediate rule holds that in an action to condemn an easement for the erection of high tension lines, evidence may be introduced establishing the effect of unsightliness and apprehension of hazard as factors diminishing the value of the land adjacent to the easement.
In the case of Kentucky Hydro Electric Co. v. Woodard, 1926, 216 Ky. 618, 287 S.W. 985, the lower court had instructed the jury that it could not consider depreciation in market value of adjacent land arising from apprehension of danger from existence of lines on the part of potential buyers. In discussing this question, the Court said:
"* * * In support of this instruction, appellant relies on the case of Alabama Power Co. v. Keystone Lime Co., 191 Ala. 58, 67 So. 833, Ann.Cas. 1917C, 878. That was a condemnation proceeding for a transmission line exactly like the one in the case before us. The Alabama court held that mere fears of people from the presence of the line could not be made a basis on which to predicate any depreciation in market value. * * *
* * * * * *
"We think this premise of the Alabama court is sound. But it will be noted that it, in turn, is based on the idea that the fears entertained are ill-defined, speculative, and not founded on reason or experience. Such fears should not enter into a calculation of damages to be awarded for depreciation of market value. They are too speculative and remote. But if such fears be reasonable, not ill-defined, but founded on practical experience, and if they be entertained so generally as to enter into the calculations of all who propose to buy or sell, can it logically be said that they do not depreciate the market value of the property? * * *" (Emphasis added.)
Accordingly, while the "majority view" absolutely excludes consideration of apprehension of fear, the "intermediate view" permits consideration of the apprehension factor upon proof that the apprehension is well-founded and so widespread as to affect the market value of the property.
In the case of Dunlap v. Loup River Public Power Dist., 1939, 136 Neb. 11, 284 N.W. 742, the Supreme Court considered, among other things, an instruction of the lower court that the jury could take into consideration the danger of transmission *174 lines, if any. The Court, in its opinion, said:
"Mere general fears from the presence of a transmission line cannot be made the basis upon which to predicate any depreciation in the market value, for ill-defined fear that at some unknown time in the future some misfortune may come to man or beast by reason of the transmission line cannot enter into the consideration of those who are required to fix the amount of the damages. But, on the other hand, if such fears be reasonable, not speculative nor ill-defined, but founded on practical experience, and if such fears are entertained so generally as to enter into the calculations of all who propose to buy or sell, can it logically be said that they do not depreciate the market value of property? If an owner cannot sell his property at as good a figure with this line across it as he could before, then his land may be depreciated on account thereof. See Kentucky Hydro-Electric Co. v. Woodard, 216 Ky. 618, 287 S.W. 985; 10 R.C.L. 156, sec. 137; St. Louis, E.R. & W.R. Co. v. Oliver, 17 Okla. 589, 87 P. 423, 10 Ann.Cas. 748; Illinois Power & Light Corporation v. Peterson, 322 Ill. 342, 153 N.E. 577, 49 A.L.R. 692."
1 Orgel on Valuation under Eminent Domain (2d Ed.) § 61, p. 278, states:
"Not all courts, however, have followed these cases in rejecting evidence of a damage on the ground that, though it may depreciate the market value of the property, it is nevertheless fanciful. In one particular type of case there has been a distinct split of opinion on this point. These are the cases where electric transmission wires are strung over the owner's property, and where he tries to recover for the depreciation in the value of his property due to the danger to life and to property resulting from a possible fall of the wires. Judging from the reported opinions, expert testimony has been almost unanimous that the fear of this unfortunate occurrence is grossly exaggerated, if not almost groundless. Yet, judging also from the reported opinions, the public fear of the danger is widespread. Thus, there is presented a clean-cut issue between those who would pay compensation only for `real' damages, and those who would pay for all diminution in the market value of the property.
"The first of these alternatives seems to have been taken in the case of Illinois, etc., Corp. v. Cooper, [322 Ill. 11, 152 N.E. 491], whereas the second alternative seems to have been chosen in Monongahela, etc., Public Service Co. v. Monongahela Development Co. [101 W. Va. 165, 132 S.E. 380]. In the Cooper case, the court said:
"`Electricity is an element of great potential danger, in the control and use of which great care is necessary, and it may be that persons having no actual knowledge of the practical operation and effect of such lines heavily charged with electricity may fear the dangers which they imagine exist because of the location of the line on the property in question. If this is so, and by reason of such fear the persons affected are not willing to buy the lands on which the line is constructed, the law cannot regard the depreciation created by such a cause as resting upon any substantial basis and cannot allow any compenstion on account of any claimed depreciation which is due to mere fear founded in reality upon lack of knowledge and not justified by the facts.'
"In the Monongahela case, the court said:
"`Relying on the settled law, that purely conjectural or speculative damages may not be recovered, the applicant charges error to evidence *175 of the defendant that (a) purchasers generally were impressed with the idea that a transmission line erected on steel towers was more dangerous than one on wooden poles. * * * The evidence of the impression held by prospective purchasers was evidence of a mental condition which actually existed and hence was evidence of a fact, and not subject to the above rule.'
"Somewhere between these two extremes one may place the case of Kentucky Hydro-Electric Co. v. Woodard, in which the appellate court upheld the trial court's refusal to instruct the jury not to award any damages for depreciation in the market value of the lands not taken, resulting from apprehension of damages to life and property caused by the construction or maintenance of an electric transmission line. The court went on to say, however, that, `a well-defined apprehension, not speculative, not unreasonable, but founded on experience,' should be considered by the jury in determining depreciation in market value of the property, and `ill-defined, speculative,' apprehension, `not founded on reason or experience,' should not be considered because it is `too speculative and remote.'"
5 Nichols on Eminent Domain (3d Ed.) § 16.103[2], Damage to remainder area, states:
"In determining the depreciated value of the remainder area consideration has been given to the effect thereon of the proximity of high voltage lines. The elements of damage must not be remote, speculative or uncertain; they must be direct and proximate, and not such as are merely possible. It has been held, however, that damages may be recovered only where there is a physical disturbance of a right of property. Mere fear of a remote or contingent injury is not usually regarded as an element of damage, although it has been said that if such fears are reasonable, not ill-defined, but founded on practical experience, and if they are entertained so generally as to enter into the calculations of all who propose to buy or sell, it cannot logically be claimed that they do not depreciate the market value of the property. The owner is to be paid for his actual damage. If he cannot sell his property at as good a figure with the line on it as he could without it, because of reasonable fears  not speculative, but founded on experience, and entertained by those who wish to buy  he has been damaged in this regard. Under such facts his land has been depreciated on account of such fear on the part of buyers. Those who cause such damage should pay for it. Unsubstantiated fear, however, has been held to be insufficient to merit consideration."
The appellee refers to the case of Hicks v. United States, 266 F.2d 515 (6th Cir.1959), as the "minority view." The Court, in its opinion in that case, states on page 521:
"The land was conceded to be a beautiful property. The damage done to the residue of the land over and above the easement strip included damage to esthetic values. See Ohio Public Service Company v. Dehring, 34 Ohio App. 532, 172 N.E. 448, which held that the unsightliness of towers and transmission lines may be considered in the award of damages for taking of farm land for a right of way for power lines, as unsightliness might affect the value of the land. Texas Power & Light Company v. Jones, Tex.Civ.App., 293 S.W. 885. Cf. Fain v. United States ex rel. Tennessee Valley Authority, 6 Cir., supra, 145 F.2d 958.
"The apprehension of injuries to person or property by the presence of power lines on the property is founded on practical experience and may be taken into *176 consideration in so far as the lines and towers affect the market value of the land. Kentucky Hydro-Electric Company v. Woodward, (sic) 216 Ky. 618, 287 S.W. 985; Oklahoma Gas & Electric Company v. Kelly, 177 Okla. 206, 58 P.2d 328. This is also the law in Tennessee. See Alloway v. City of Nashville, 88 Tenn. 510, 526, 13 S.W. 123, 8 L.R.A. 123, which holds that it is a question for the jury whether a reasonable apprehension of danger from inherent defects and unavoidable accidents may exist, and, if so, such an apprehension so far as it depreciates the present market value of the land not taken is an element of incidental damages. From this record with its details as to the structure of the power lines and towers we find that the apprehension is reasonable. A TVA witness of 19 years experience testified that the towers might attract lightning better than trees. As to the figure for incidental damage taking into consideration the testimony of all the witnesses on this point, we find that $90.00 per acre is a fair allowance amounting to $10,170.00 for the 113 acres."
It is probable that the distinction between the Hicks case and other so-called "minority views" is concerned only with the quantum of proof necessary and the amount of justification offered for the alleged apprehension. As I would view the various decisions, there are essentially two views, one which reasons that apprehension of danger, etc., or unsightliness is necessarily speculative and not provable, and the other which permits proof that the factors of apprehension and unsightliness as depreciating elements are well-founded and widespread and therefore permits evidence to show that the remainder of the property is diminished in value due to these factors.
Recapitulating, it might be said that the stricter rule with respect to consideration of public apprehension and its affect on value, absolutely prohibits such consideration. This is the view adopted in the instant majority opinion. The intermediate rule permits consideration of the apprehension factor upon proof that the apprehension is both well-founded and widespread. This is the rule I would adopt. The most liberal rule permits consideration of apprehension upon proof that the apprehension is predicated on more than mere conjecture or assumption and is widespread.
The strict view with respect to "unsightliness" absolutely prohibits its consideration. The liberal view permits consideration of "aesthetic" values when such values are reasonably connected with the use of the land. Although the majority opinion is not clear as to the view adopted in this latter regard, I will assume and concur in adoption of the latter view. See Kamo Electric Cooperative v. Brooks, Mo. App. 1960, 337 S.W.2d 444.