490 So.2d 969 (1986)
FLORIDA POWER & LIGHT COMPANY, a Florida Corporation, Appellant,
v.
Virginia S. ROBERTS, et al., Appellees.
Nos. 85-430, 85-431 and 85-765.
District Court of Appeal of Florida, Fifth District.
June 5, 1986.
Rehearing Denied July 3, 1986.
Darrey A. Davis & Barry R. Davidson of Steel, Hector & Davis, Miami, for appellant.
David W. Foerster, P.A., Jacksonville, for appellees.
*970 COBB, Chief Judge.
Florida Power & Light Company (FPL) appeals from a final judgment based on a jury verdict in a condemnation action which awarded taking value and severance damages to appellees, Virginia S. Roberts and Richard K. Whitehead, Sr. FPL brought a condemnation action against appellee Roberts in order to acquire a 60-acre parcel of land for a substation site, and against Whitehead and Roberts in order to acquire an electric transmission easement across various parcels of their land for the construction, operation and maintenance of 500,000 volt (500 kV) transmission lines linking coal-fired electric plants in Georgia with Florida. The cases were consolidated for trial on the compensation issues.
Section 73.071(3)(b), Florida Statutes (1983), allows the jury to determine not only the value of the property sought to be appropriated, but also "[w]here less than the entire property is sought to be appropriated, any damages to the remainder caused by the taking... ." Here, appellees sought to show that the electromagnetic fields associated with high power electric transmission lines would create an adverse effect on adjacent remaining property by presenting the expert testimony of John Norgard, an electrical engineer, and Nancy Wertheimer, an epidemiologist. Both testified that the construction and operation of 500 kV transmission lines by FPL would pose a health hazard to people living on land adjacent to the lines, resulting in devaluation of those lands. FPL had filed motions in limine prior to trial objecting to the qualifications of these expert witnesses and to the propriety of their testimony on the ground that the alleged adverse effects did not have any relationship to the value of land adjacent to those lines in Putnam County. The motions were heard as objections during the trial and were denied. The primary issue with which we are concerned on appeal is the admissibility of this "scientific" evidence.
FPL argues that Casey v. Florida Power Corp., 157 So.2d 168 (Fla. 2d DCA 1963), mandates reversal of the severance damages in this case. As in the instant case, Casey was a proceeding to condemn an easement for an electrical transmission line. The Second District upheld the trial court's exclusion of the profferred testimony of an expert that the electric transmission lines would reduce the value of the remaining land due to public apprehension of the hazard. The court noted that there were three divergent views on this issue (the majority, intermediate and minority rule), but adopted what the condemnor in that case considered was the majority rule  that opinion testimony as to value in a condemnation case, based upon fear of high voltage transmission lines, is too speculative and conjectural to ever be considered as an element of damage to adjacent land. The court stated:
That a prospective purchaser of the land of the respondents will be so timid or so ignorant that he either will not buy at all or will offer less than the true value because of the transmission lines and towers is too highly speculative in regard to this particular land to be taken into consideration. This court, like the majority of other courts, recognizes the owners' right to full and just compensation; but when a jury must base its award upon ignorance and fear, we must draw the line; such a basis cannot possibly result in fair and just compensation. This court will go with what the petitioner calls the majority rule and hold that no error has been made to appear in the ruling of the trial court. For authority on this point see 49 A.L.R. 702; 124 A.L.R. 407; 5 Nichols on Eminent Domain, 3d Ed., Sec. 16.103(1); and Institute on Eminent Domain, Southwest Legal Foundation, 1960 Ed., pp. 104, 105.
157 So.2d at 170-71.
The "majority rule" adopted in Casey holds that there will be no compensation for alleged diminution of value of property due to the fears of prospective purchasers. This view assumes that the fears concerning electric transmission lines are generally unjustified and founded upon ignorance and superstition and, therefore, are too *971 speculative and conjectural to be considered as an element of damage to adjacent land. The "intermediate rule" permits evidence establishing the effect of fear and apprehension of hazard as a factor diminishing the value of land adjacent to the easement, provided it is established that such fears are reasonable, and that such fears are entertained so generally as to enter into the calculations of all who propose to buy or sell the adjacent land. The "minority rule" permits consideration of fear and apprehension upon proof that such fear of danger is predicated upon more than mere conjecture or assumption and is so widespread as to prospective purchasers that it affects market value. The reasonableness of the fear is either assumed or is deemed irrelevant. See, generally, Willsey v. Kansas City Power & Light Co., 6 Kan. App. 2d 599, 631 P.2d 268 (1981).
Appellees attempt to distinguish Casey on the ground that the witnesses for the landowner in Casey presented insufficient evidence that prospective purchasers were affected by the transmission lines; this is really an argument as to the wisdom of the ruling in Casey, and not a proper distinction. Casey explicitly adopts the "majority rule" and, therefore, it clearly supports the position of FPL. We do not agree with Casey, however, and elect not to follow it.
In the first place, as pointed out by appellees, it appears that the "majority rule" as stated in Casey is not the majority rule today. The court in Willsey, supra, states that four states (including Florida based on Casey) currently follow the supposed "majority rule;" nine states follow the "intermediate rule;" and eleven states follow the supposed "minority rule." More importantly, the basis for the ruling in Casey, rendered over twenty years ago, was that knowledge of the health effects from transmission lines known at that time was predicated only on "fear" and "apprehension," which falls in the category of speculation and conjecture. However, as stated by the expert witnesses in the instant case, there has been an "explosion of positive results" within the last few years which indicates that extended exposure to electric transmission lines can adversely affect human life. Specifically, Dr. Norgard, the electrical engineer who testified below, stated that the electromagnetic field generated by the electric transmission lines can not only interfere with radio and television signals, but also with mechanical devices such as heart pacemakers. His research showed that constant exposure to the electromagnetic field can cause increased incidents of heart attacks, mental disturbances and behaviorial disorders; disruptions in body temperature cycles, and in the growth rate of animals, as well as reproductive problems, blood chemical and nervous system changes, and higher rates of cancer. Furthermore, Dr. Wertheimer, the epidemiologist who testified below, has published two epidemiological studies relating to electrical wiring configurations and their effect on cancer. Her research showed a definite link between electric transmission lines and cancer with both children and adults who live in close proximity to the lines.
In the recent case of Florida Power & Light Co. v. Jennings, 485 So.2d 1374 (Fla. 1st DCA 1986), the First District rejected the Casey rationale and adopted the "intermediate rule." We agree with Jennings. The requirement of the "intermediate rule" that evidence must be introduced to establish a relationship between the apprehensions pertaining to the proximity of electric transmission lines and market values was met in the instant case by testimony and exhibits relating to a "severance study" based on sales of realty adjacent to transmission lines in Hernando County. Properties with comparable characteristics may be removed geographically from an immediate area, and still be admissible for purposes of evaluation. See Claiborne v. City of Jacksonville, 260 So.2d 257 (Fla. 1st DCA 1972); Rochelle v. State Road Dept. of Florida, 196 So.2d 477 (Fla. 2d DCA 1967). This determination is a matter largely within the discretion of the trial court. Staninger v. Jacksonville Expressway *972 Authority, 182 So.2d 483 (Fla. 1st DCA 1966).
Since we find no merit in the remaining points raised by FPL, we affirm the judgment below, and certify conflict with Casey.
AFFIRMED.
DAUKSCH and ORFINGER, JJ., concur.