518 So.2d 895 (1987)
FLORIDA POWER & LIGHT COMPANY, Petitioner,
v.
S.B. JENNINGS a/k/a Bryan Jennings, Jr., et al., Respondents.
FLORIDA POWER & LIGHT COMPANY, Petitioner,
v.
Virginia S. ROBERTS, et al., Respondents.
Nos. 68593, 69069.
Supreme Court of Florida.
September 3, 1987.
Barry R. Davidson, of Steel, Hector & Davis, Miami, for petitioner.
David W. Foerster, of David W. Foerster, P.A., Jacksonville, for respondents.
H. Rex Owen and Bruce Crawford, of Owen & McCrory, and Harry A. Evertz, III, St. Petersburg, and Sheila McDevitt, Tampa, for Florida Power Corp. and Tampa Elec. Co., amici curiae.
Anita L. Shepperd and William H. Chandler, of Chandler, Gray, Lang & Haswell, P.A., Gainesville, for Florida Rural Elec. Cooperatives Ass'n., amicus curiae.
EHRLICH, Justice.
We have consolidated for our review two eminent domain cases, Florida Power & Light Company v. Jennings, 485 So.2d 1374 (Fla. 1st DCA 1986), and Florida Power & Light Co. v. Roberts, 490 So.2d 969 (Fla. 5th DCA 1986),[1] as both cases involve the identical issue. The district court in Jennings certified the following question of great public importance:
IS EVIDENCE OF THE EXISTENCE OF FEAR AND ITS EFFECT ON MARKET VALUE ADMISSIBLE AS A FACTOR IN PROPERTY VALUATION, IF IT IS SHOWN THAT THE FEAR IS REASONABLE.
485 So.2d at 1379. We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. We hold that all evidence relevant to the issue of full compensation is admissible in eminent domain proceedings. The public's "fear" as a factor which may be relevant to the issue of just compensation may be utilized as a basis for an expert's valuation opinion regardless of whether this fear is objectively reasonable.
The "fear" at issue here concerns the public's perception of health and safety *896 hazards arising from human proximity to 500,000 volt (500 kV) transmission lines. The petitioner, Florida Power & Light (FPL), initiated condemnation proceedings for a perpetual utility easement for FPL's planned 500 kV transmission lines; these lines are supported by 115-125 foot high structures with 99 foot crossarms. FPL's real estate appraiser testified below that there were no severance damages to the remainder of the landowners' property and further testified that the landowners would still retain some uses of the condemned easements. The property owners presented expert testimony from, inter alia, a professional planning consultant and three real estate brokers and appraisers. These real estate witnesses' testimony covered comparable sales of property in other counties located on either a 500 kV or 240 kV line and opined that the landowners had suffered damages on the taken parcels greater than those claimed by FPL's appraiser and that the landowners had suffered severance damages to their remaining land.
The issue presented here centers on two of the landowners' scientific expert witnesses, Dr. Norgard and Dr. Wertheimer, who testified concerning the adverse health effects of 500 kV transmission lines. Norgard, a professor of electrical engineering, testified about the coupling effect of electrical energy from power lines into the human body. Norgard concluded that there is a long-term chronic effect on humans from exposure to these fields. Wertheimer, an epidemologist, had undertaken field studies of leukemia in children; she had published findings that demonstrated a link between cancer in children and their proximity to power lines. Wertheimer testified below that recent studies from other countries indicate that constant exposure to high voltage electromagnetic fields promotes cancer.
FPL had filed a motion in limine to exclude these scientific experts from testifying. FPL argued that Casey v. Florida Power Corp., 157 So.2d 168 (Fla. 2d DCA 1963), represented the law in Florida on this issue and that such evidence was inadmissible unless a property appraiser could testify that his valuation opinion is based on the fact that potential purchasers of real property in the relevant county are knowledgeable about the alleged adverse effects and that these buyers would depreciate the land adjacent to a power line before they would buy it. The landowners responded to FPL's argument by pointing out that within the previous eighteen months, numerous articles had been published concerning the adverse effects of high voltage transmission lines. Consequently, the landowners argued, the public is aware of the issue and the market place reflects this fact. The landowners intended on introducing comparable sale studies, including one from another 500 kV line located in Hernando County; the landowners argued that the scientific experts' testimony was necessary to show the causes of the depreciation in value which the comparable sales studies would reflect.
The trial court denied FPL's motion and ruled that the scientific testimony was admissible; the court ruled this evidence was relevant not only to the issue of damages to the taken property but was also relevant to the issue of severance damages. The jury returned verdicts for each of the taken parcels which was greater than the valuation given by FPL's appraiser and also awarded severance damages for each parcel.
On appeal, the district court affirmed and rejected FPL's assertion that it was error for the trial court to refuse to follow Casey. While holding that admitting the testimony of the landowners' scientific experts was not an abuse of discretion by the trial court, 485 So.2d at 1379, the district court rejected the reasoning employed in Casey which held that "opinion evidence as to value in a condemnation case, based upon fear of a steel tower and high voltage transmission lines, is too speculative and conjectural to be considered as an element of damage to adjacent land." Casey v. Florida Power Corp., 157 So.2d at 170. Sub judice, the district court opted for what was characterized in Casey, 157 So.2d at 170, as the intermediate rule:

*897 Under this rule, evidence of the existence of fear and its effect on market value may be admitted into evidence as a factor or circumstance to be considered by the trier of fact in a property valuation proceeding, so long as it is shown that the fear has a reasonable basis.
485 So.2d at 1379.
At the outset, we agree with the district court's rejection of Casey. Casey was premised, at least in part, on a characterization by the court that a potential buyer who would offer less than the "true value" for the property because of transmission lines and towers would do so because of timidity or ignorance, 157 So.2d at 170, and that such "ignorance and fear" cannot serve as the basis for a jury award. Id. at 171. We reject Casey for two reasons. First, the above quoted language referring to a potential buyer who would offer less than the "true value" of the property because of fear or ignorance is a conclusory and contradictory statement. The issue in eminent domain proceedings is a determination of what is the "true value" of the land taken for a public purpose.[2] The second reason flows from the first. If potential buyers entertain fears concerning transmission lines and towers and would, therefore be willing to pay less for the property in question, then Casey's rationale excludes evidence which is extremely relevant to the central issue of what is full compensation to the landowner.
The district court's endorsement of the so-called intermediate rule which allows fear to be considered by the jury if the fear is reasonable has superficial appeal. We perceive the court's concern with the reasonableness of the public's fear to be based on an assumption that a jury award based upon an objectively unreasonable fear would in effect allow the jury to base its award on speculation and conjecture, which of course it may not do. See, e.g., Walters v. State Road Department, 239 So.2d 878, 882 (Fla. 1st DCA 1970) (a jury verdict based on such factors is in derogation of constitutional guarantee of full compensation). FPL and amici argue that the district court's rejection of Casey and its adoption of the intermediate rule with its requirement of a reasonable basis for fear, in fact exacerbates the problem of speculative jury awards, because it allows the jury to compensate a landowner for an inherently subjective and speculative element. We reject petitioner's argument in this context because its premise is unsound: The scientific testimony below was purportedly admitted to show one of the reasons why land adjacent to transmission lines decreases in value. As stated, the scientific testimony was deemed admissible evidence by the trial court because it would explain the decrease in land value which the landowner's comparable sales evidence would show. Contrary to petitioner's characterization, therefore, this scientific testimony concerning the alleged adverse health effects of a 500 kV transmission line was not introduced on the theory that the jury could consider the adverse health effects of these lines as an additional and independent basis for compensation.
We do, however, find merit in FPL's other arguments against the intermediate rule, and, therefore, we disapprove the district court's adoption of the intermediate rule. We reject as irrelevant the requirement that the landowner must prove to the jury that the public's fear of the alleged adverse health effects from these transmission lines has a reasonable scientific basis. Adverse health effects vel non is not the issue in eminent domain proceedings: full compensation to the landowner for the property taken is. Allowing such scientific testimony into evidence, albeit under the guise of explaining why the presence *898 of transmission lines depreciates the value of adjacent property, is irrelevant to the issue of full compensation. Not only does allowing such scientific testimony into evidence confuse the true issue, it also presents the unacceptable risk that the jury will feel obliged, if it believes the landowners' experts, to fashion an award that encompasses possible future injuries to persons. Eminent domain proceedings are actions in rem, See Peeler v. Duval County, 66 So.2d 247 (Fla. 1953); Wilson v. Jacksonville Expressway Authority, 110 So.2d 707 (Fla. 1st DCA 1959); allowing a jury to compensate a landowner for possible future personal injuries would transform the proceedings into an in personam action. Such a change is unwarranted in order to ensure the constitutional guarantee of full compensation for property taken for a public purpose.
As stated, the issue in eminent domain proceedings is to determine what is full compensation for both the property taken and for damages to the remaining property. Typically this involves real property brokers or appraisers who give valuation testimony based on, e.g., the current or potential use of the property in question, the population growth and development of the surrounding area, and sales of similar property. Sub judice, the landowners' real property experts extensively relied on sales of comparable property in other counties located adjacent to a 240 kV or 500 kV transmission line. Depending on the county and the size of the transmission line, this testimony tended to show a decrease in value ranging from twenty-seven to forty-seven percent for property along transmission lines. When asked to explain the reasons for the decrease, one of the landowners' experts explained:
My investigations reveal that there was a definite concern on the part of the buying public in two specific areas, principally two, and these specific areas were the matter of aesthetics, and the matter of the unsightliness of the lines for one, and secondly, the matter of the health hazards.
We hold that the scientific testimony introduced below was irrelevant and unnecessary. It could not be seriously suggested that the first factor relied on by the expert quoted above to explain the devaluation-aesthetics needed to be supported by the testimony of "aesthetic experts" who could testify that there is a "reasonable basis" for the fact that potential buyers would pay less for the property because of the unsightliness of transmission lines and towers. Whether this aesthetic factor could be shown to be objectively reasonable is irrelevant: the only relevant consideration in this context is whether, in fact, property adjacent to these transmission lines sells for less after the towers are present than it did before. This also holds true for the question of alleged health hazards.
We join the majority of jurisdictions who have considered this issue and hold that the impact of public fear on the market value of the property is admissible without independent proof of the reasonableness of the fear.[3] This view is perhaps best represented by the sixth circuit's decision in Hicks v. United States, 266 F.2d 515, 521 (6th Cir.1959), which held:
The apprehension of injuries to person or property by the presence of power lines on the property is founded on practical experience and may be taken into consideration in so far as the lines and towers affect the market value of the land.
(citations omitted). The sixth circuit in United States ex rel. TVA v. Easement and Right of Way, 405 F.2d 305 (6th Cir.1968), had occasion to reevaluate its decision in Hicks when the condemning authority, the TVA, insisted that its recent studies show such transmission lines were, in *899 fact, safe. The court adhered to its decision in Hicks, holding:
TVA has conducted numerous safety studies and has concluded from them that apprehension of injuries is not founded on practical experience and should not be considered in awarding incidental damages. The TVA studies conducted on this issue are also creditable. However, in final analysis, we are concerned only with market value. Although these studies may show objectively the complete safety of these structures, we are not convinced that certain segments of the buying public may not remain apprehensive of these high voltage lines, and therefore might be unwilling to pay as much for the property as they otherwise would.
Id. at 309.
The experts' scientific testimony introduced below was irrelevant to any fact at issue. "The theory of allowing evidence of an expert witness to be received by the triers of fact is to understand and determine an issue of fact." Wright v. State, 348 So.2d 26, 31 (Fla. 1st DCA 1977), cert. denied, 353 So.2d 679 (Fla. 1977). The scientists who testified below on behalf of the landowners added nothing to aid the jury in determining the value of the taken property and any severance damages to the remainder. Instead, the scientific testimony altered the focus of the trial and confused the issue to be determined. Under the rule we adopt today, the reasonableness of fear is either assumed or is considered irrelevant. See Willsey v. Kansas City Power & Light Co., 6 Kan. App. 2d 599, 605-606, 631 P.2d 268, 274 (1981) (and cases cited therein). We agree with the observation made by the court in Willsey that "[a] certain amount of fear and a healthy wariness in the presence of high voltage lines strikes us as eminently reasonable." Id. at 614, 631 P.2d at 279. We believe that a jury is certainly capable of determining whether an experts' valuation opinion is reasonable that explains the devaluation of property adjacent to high voltage lines in part, because of the public's fear of health hazards. By the same token, we believe that a jury could also determine the reasonableness of a valuation opinion which explains the devaluation of such adjacent property on the grounds that, e.g., the buying public is fearful that transmission lines attract alien being in flying saucers. In short, whether a real property expert's valuation opinion is based on reasonable factors may be determined by the jury without resort to other expert witnesses' testimony or documentary evidence concerning the reasonableness of the buying public's fears.
In addition to the fact that the scientific testimony introduced below was irrelevant to any fact at issue and only tended to obfuscate the issue of full compensation, we reject the intermediate rule for another reason. Under the guise of showing the reasonableness of the public's fear, the jury below was allowed to hear testimony that the electric field from high voltage lines can produce a coupling effect of electrical energy into the human body and that the result is a long-term chronic effect. The jury was also allowed to hear that constant exposure to high voltage electromagnetic fields promotes cancer in children and adults. This irrelevant testimony is so inflammatory and prejudicial that we find a new trial is warranted. If these dire scientific predictions do, in fact, transpire, those so injured will have their day in court. Redress for future personal injuries is not proper in an in rem eminent domain proceeding.
In conclusion, we hold that any factor, including public fear, which impacts on the market value of land taken for a public purpose may be considered to explain the basis for an expert's valuation opinion. Whether this fear is objectively reasonable is irrelevant to the issue of full compensation in an eminent domain proceeding. The introduction into evidence of independent expert's scientific testimony is, therefore, unnecessary and only serves to confuse the actual issue before the jury. Because this irrelevant scientific testimony was prejudicial and inflammatory, we quash the decision of the district court below and remand for a new trial in accordance *900 with this opinion.[4] The trial court's awards of attorneys' fees are reversed for redetermination at the conclusion of the litigation on remand.
It is so ordered.
McDONALD, C.J., and OVERTON, SHAW, BARKETT, GRIMES and KOGAN, JJ., concur.
NOTES
[1] The First District Court's decision in Jennings preceded the decision of the Fifth District in Roberts, and it was upon Jennings that Roberts relied. 490 So.2d at 971. Both district courts rejected the reasoning employed in Casey v. Florida Power Corp., 157 So.2d 168 (Fla. 2d DCA 1963). Simply for clarity, we will refer only to the decision below in Jennings.
[2] Art. X, § 6 of the Florida Constitution provides for "full compensation" to a landowner for property taken for a public purpose. We read the phrase "true value" employed in Casey as the court's chosen expression that full compensation to the landowner should entail paying the owner the true value of his taken property. There is no single test for determining what is full compensation. We have held that fair market value (comparing pre- with-post-condemnation values) is merely a tool in determining full compensation, and that "all facts and circumstances which bear a reasonable relationship to the loss" must be taken into account. Jacksonville Expressway Authority v. Henry G. Du Pree Co., 108 So.2d 289, 291 (Fla. 1958).
[3] In Willsey v. Kansas City Power & Light Co., 6 Kan. App. 2d 599, 605-607, 631 P.2d 268, 274-275 (1981), relied upon by all the parties, the court noted that at least eleven states plus the United States Court of Appeals, 6th Circuit, follow the rule we adopt today; nine states follow the rule adopted by the district court sub judice, and four states follow the rule announced in Casey. With our disapproval of Casey herein, this latter category presumably now contains only three states.
[4] FPL raises two other issues related solely to the decision below in Roberts. Like the district court in Roberts, 490 So.2d at 972, we find no merit to these contentions.