629 So.2d 932 (1993)
STATE of Florida, DEPARTMENT OF TRANSPORTATION, Appellant,
v.
Ida FINKELSTEIN, Alice Fox, and Tenneco Oil Company a/k/a TOC Retail, Inc., Appellees.
No. 92-2501.
District Court of Appeal of Florida, Fourth District.
December 8, 1993.
Rehearing Denied and Question Certified February 8, 1994.
Thornton J. Williams, Gen. Counsel, and Gregory G. Costas, Asst. Gen. Counsel, Dept. of Transp., Tallahassee, for appellants.
Charles M. Phillips, Jr., Dunedin, for appellees.
JAMES C. DOWNEY, Senior Judge.
This is a plenary appeal by the Florida Department of Transportation (DOT) from a final judgment in an eminent domain proceeding arising out of the construction of Interstate I-595 in Broward County. The Appellees, Ida Finkelstein and Alice Fox, were the fee simple title holders and Appellee, Tenneco Oil Company, a/k/a TOC Retail, Inc. (Tenneco), is the lessee of the property in question, parcel 269.
The DOT filed a petition to condemn parcel 269 and other parcels, not involved herein, in March 1990, together with a declaration of taking which was subsequently amended, stating the appraised value of the property taken as $642,650.00. After a hearing on May 1, 1990, the court entered an order of taking in accordance with the motion and title passed to the DOT. The appellees answered in May and June of 1990 and the matter lay dormant, pleading-wise, until April 3, 1992, when a pretrial order setting the matter for trial was filed.
*933 On June 12, 1992, the DOT filed a motion in limine alleging that the property in question was contaminated with petroleum hydrocarbon. The motion alleged the said conditions had required emergency decontamination necessitating that the DOT "conduct emergency clean-up operations through the State's Office of Environment in order to remediate the contamination of parcel 269, prior to construction." The motion advised the court that the parties were aware "that the subject property is an E.D.I. (Early Detection Incentive) site which qualifies for federal funding for the clean-up of the contamination." It was further alleged that the cost of clean-up and reimbursement was unknown at that time and would probably not be known for a year or more, but in any event, under Florida law, Tenneco should bear the responsibility for the reasonable clean-up cost. Furthermore, DOT asserted that "a buyer in the market would take into consideration the contamination issue in determining the value of the property to be purchased." It was therefore contended by DOT that in the absence of an agreement from Tenneco to assume responsibility for such costs, the introduction of evidence of the contamination and cost incurred to clean-up the property are relevant to the valuation process.[1] Tenneco argued that the motion should be denied because the proof sought to be introduced was irrelevant to the issue of value. DOT responded that all facts and circumstances are relevant which bear a reasonable relationship to and have an effect upon the value of the property in the mind of a buyer. The trial court denied the motion in limine and prior to the beginning of the actual trial, DOT made a proffer of its evidence having to do with the contamination and remediation of the property and its effect on the valuation thereof. Tenneco objected to the admission of the proffer and the objection was sustained.
The case was tried as though the property was uncontaminated, which all concede was not the true factual situation, and the experts testified to the value as though it were uncontaminated. Consistent with that theory, all of the experts' comparable properties were uncontaminated properties. Since the parties had agreed on the value of the improvements on the property, the only question presented for the jury's determination was the value of the land as though it was unimproved. The trial was held in June 1992 while the taking occurred May 1, 1990. Nevertheless, in making its determination, the jury was never apprised of the fact that on May 1, 1990, the critical value date, the property was contaminated. As a result, the owners' experts' valuation of the land was $567,000 which together with the improvements of $350,000, resulted in a total valuation of $917,000. DOT's expert evaluated the land as worth $300,000 which added to the value of the improvements, amounted to a value of $650,0000. The jury found in favor of the property owners valuing the land at $525,000 making a total award of $875,000.
The issue presented on this appeal is whether the trial court erred in its rulings on the motion in limine and the DOT's proffer of evidence to show the condition of the property on the date of taking which required the case to be tried as though the parcel was uncontaminated.
We believe a reversal of the judgment appealed from and a remand for a new trial is required because the case was not properly tried under Florida law. It was tried, not by stipulation, but rather over DOT's objection, on an alleged factual basis which was known to be untrue. This is not to suggest that any fraud occurred, but rather that the trial proceeded upon an improper conception of the law.
In condemnation cases, the value of the property being taken is determined as of the date of taking or the date of trial, whichever occurs first. § 73.071(2), Fla. Stat. (1989). If the property involved possesses *934 some characteristic affecting its value on the date of taking, how can it be said that such a characteristic is irrelevant as Tenneco claimed and the court ruled below? On the contrary, the trier of fact should consider any factor which impacts upon the market value of the property and is a proper basis for the expert's consideration. Florida Power & Light Co. v. Jennings, 518 So.2d 895, 899 (Fla. 1987).
DOT sought to adduce proof that contamination and remediation of the property was a valid factor to be considered by the experts in determining the value of the property on May 1, 1990. Its expert supported that theory at the time of the proffer. Though Tenneco adduced no proof in that regard, its counsel stated, in opposition to the proffer, that it was irrelevant evidence and that his proof would show that was not a factor affecting the value of the property. We reject that argument, but in any event, if issue could be joined on that question it would be for the trier of fact to decide.
In a fairly similar case, Redevelopment Agency v. Thrifty Oil Company, 4 Cal. App. 4th 469, 5 Cal. Rptr.2d 687 (1992), the agency sought to condemn property owned by Thrifty, an operating gasoline station. One of the main issues involved was the effect of the contamination of the property on the value thereof. Thrifty, as Tenneco did here, contended the contamination was not relevant. That argument was overruled and evidence was adduced as to the value of the property based on several approaches to value. All of the experts considered the contamination and remediation in arriving at the fair market value of the property and the appellate court affirmed the trial court's ruling. By way of footnote, in referring to the question of contamination and remediation, the court said: "As a characteristic of the property which would affect its value the remediation issue was properly before the trier of fact." Id. 5 Cal. Rptr.2d at 689.
Having established that the contamination and cost of rectifying that condition was relevant evidence to be considered by the jury, we would point out that the mere cost of remediation is not the sole effect of contamination. In our judgment, the mere fact that the property is, or has been contaminated, may have a direct bearing upon the value of the property in the marketplace. Apropos of that consideration, we look to the case of Florida Power & Light Co. v. Jennings, 518 So.2d 895 (Fla. 1987), wherein the Supreme Court of Florida reviewed a condemnation judgment in favor of the property owner which involved the admissibility of evidence of the public's fear of high voltage electric transmission lines as they affect the market value of the remaining property. The court held:
In conclusion, we hold that any factor, including public fear, which impacts on the market value of land taken for a public purpose may be considered to explain the basis for an expert's valuation opinion. Whether this fear is objectively reasonable is irrelevant to the issue of full compensation in an eminent domain proceeding.
Id. at 899.
Jennings teaches that characteristics of the condemned property are the things of which a real estate expert's opinion is made. They are the factors which influence a purchaser in determining how much to pay for a piece of property. Some of those characteristics are fear generated by high voltage electric transmission lines, contamination of property by gasoline hydrocarbon, and toxic waste of all kinds.
Thus, the evidence which DOT attempted to offer relative to the contamination of the property and the cost of remediation was relevant to the value of the property on the date of taking, but it was also relevant regarding the effect which the stigma of contamination would have on its market value in the mind of the buying public. DOT's experts were prepared to offer evidence that the opinion of an interested buyer would be affected by the fact that the property had suffered contamination, as well as its present condition.
The only question remaining is how the cost of remediation should be handled vis-a-vis the parties in view of the fact that there exists a governmental program which reimburses an owner who incurs the expense of remediating contaminated property that qualifies under the E.D.I. program.
The record is somewhat vague regarding the status of the property with regard to the contamination and remediation at the time of *935 trial. As best we can determine, it appears that the property was unquestionably contaminated by gasoline hydrocarbonation on the day of taking. However, the record reflects that there exists the aforementioned program sponsored by the State Department of Environmental Affairs, which reimburses certain qualifying properties for remediation of contamination. In fact, it appears the owners had already commenced a remediation program when DOT took possession of the property. In view of their road building project, DOT was anxious to have the remediation completed so it proceeded with the cleansing work. How long it took and what was the reasonable cost thereof, is unknown on this record. In all probability, the remediation is completed and all of the factors necessary to render an equitable distribution of any governmental award are now available. Therefore, in a retrial of the case, those relevant characteristics of the property will be available for the jury's determination in fixing the fair market value of the property, including the remediation costs and the effects of contamination on the valuation.
Accordingly, the judgment appealed from is reversed and the cause is remanded for a new trial in accordance with this opinion.
REVERSED AND REMANDED.
GUNTHER and FARMER, JJ., concur.
NOTES
[1] This argument seems to be supported by paragraph 8 of the Order of Taking entered May 1, 1990 which stated:

Defendants will be responsible for and hold the State of Florida Department of Transportation harmless from any claims for environmental damages associated with any contaminants, including petroleum products, determined to be present or released, including by way of leak, discharge or seepage from the subject property while Defendants were in possession.