656 So.2d 921 (1995)
Ida FINKELSTEIN, Alice Fox, and Tenneco Oil Company, a/k/a TOC Retail, Inc., Petitioners,
v.
DEPARTMENT OF TRANSPORTATION, Respondent.
No. 83308.
Supreme Court of Florida.
May 18, 1995.
Rehearing Denied July 5, 1995.
*922 Amy Brigham Boulris and Alan E. DeSerio of Brigham, Moore, Gaylord, Schuster & Merlin, Miami, Charles M. Phillips, Jr., Dunedin, and Elizabeth G. Lowrey of Lewis, Longman & Walker, West Palm Beach, for petitioners.
Thornton J. Williams, Gen. Counsel and Gregory G. Costas, Asst. Gen. Counsel, Tallahassee, for respondent.
WELLS, Justice.
We have for review the decision of State Department of Transportation v. Finkelstein, 629 So.2d 932 (Fla. 4th DCA 1993), in which the Fourth District Court of Appeal certified an issue to be of great public importance. We have jurisdiction based upon article V, section 3(b)(4) of the Florida Constitution.
At the outset, we note that the district court, by order denying the petitioners' request for rehearing, stated, "the question involved herein is certified to the Supreme Court of Florida as one of great public importance." However, we do not have the benefit of the district court's formulation of the question certified. In a certification pursuant to article V, section 3(b)(4), the district court is to formulate the question. The failure to formulate the question does not render this Court to be without jurisdiction, Rupp v. Jackson, 238 So.2d 86 (Fla. 1970), but it makes our review more difficult and is fraught with the problems enumerated in the dissent in Lake Region Packing Association, Inc. v. Furze, 327 So.2d 212 (Fla. 1976). The district court in its opinion did frame the issue it had before it on appeal to be: "Whether the trial court erred in its rulings on the motion in limine and the DOT's proffer of evidence to show the condition of the property on the date of taking which required the case to be tried as though the property was uncontaminated." 629 So.2d at 933. Petitioners and respondent Department of Transportation (DOT) appear to agree that "the question involved herein is": "Whether evidence of environmental contamination is relevant and otherwise admissible in an eminent domain valuation trial."
In answer to this question, we hold that evidence of contamination is relevant and admissible on the issue of market value in a valuation trial if there is a sufficient factual predicate upon which to conclude that the contamination does affect the market value of the property taken. In this case, we *923 approve in part and quash in part the district court's decision reversing the trial court's denial of DOT's motion in limine and admissibility of the evidence.
DOT filed a petition to condemn this property in March 1990, together with a declaration of taking. After a hearing on May 1, 1990, the court entered an order of taking. Thereafter and prior to the valuation trial, DOT filed a motion in limine alleging that the property in question was contaminated with petroleum hydrocarbon. Petitioners agreed that the property was contaminated.
Sometime before December 1988, Tenneco had discovered petroleum ground-water contamination beneath the subject site and had reported this to the Department of Environmental Regulation (DER) pursuant to section 376.3071(9)(b), Florida Statutes (1987). DER had determined the property to be eligible for the Early Detection Incentive (EDI) program, which ensured the owners of the property reimbursement for remediation costs.
DOT contends that its motion in limine and proffered evidence, which were the subject of the appellate issue framed by the district court, would have established the following:
1. The fact that the subject property was contaminated by petroleum hydrocarbons on the date of valuation and the extent of the contamination.
2. Remediation costs ranged between $750,000 to $800,000.
3. Buyers, sellers, and lending institutions routinely request contamination assessments of real property.
4. Banks are reluctant to finance "dirty" property or take back such property in default.
5. Increased costs related to procurement of contamination assessments, restrictions on use, and the "stigma of contamination" affect the marketability and desirability of the property and would have a negative impact on the value of the subject property of at least twenty to twenty-five percent.
DOT states in its brief that
[t]he only purpose for putting on the contamination/remediation testimony was to show the basis for the Department's appraiser's expert opinion that the contaminated status of the property on the date of the taking would have had a negative impact upon the market value of the property in the range of twenty to twenty-five percent.
Further, DOT states that it does not seek a mathematical setoff from the value of the property based upon the costs of remediation and that a determination of liability for the contamination is not an issue in the case.
The trial court denied DOT's motion in limine and its proffered evidence. The trial court ruled that since the cost of remediation of the contamination was being reimbursed through the EDI program, the fact that the property was contaminated was not relevant. The case was tried as though the property was uncontaminated, which all concede was not the true factual situation. The experts testified to the value as though it was uncontaminated. Consistent with that theory, all of the experts' comparable properties were uncontaminated properties. Since the parties had agreed on the value of the improvements on the property, the only question presented for the jury's determination was the value of the land as though it was unimproved. The jury was never apprised of the fact that on the date of the taking, which was the critical valuation date, the property was contaminated. The jury found in favor of the property owners' valuation of the property.
The district court reversed the valuation judgment. The district court's decision was that "the evidence which DOT attempted to offer relative to the contamination of the property and the cost of remediation was relevant to the value of the property on the date of taking." Finkelstein, 629 So.2d at 934. The district court determined that the evidence was relevant regarding the effect which the stigma of contamination would have on the property's market value in the mind of the buying public.
From our review of the record, we find no factual issue in this valuation proceeding as to the contamination of the property, the liability for the contamination, or the payment for the remediation costs under the EDI program. Therefore, based upon *924 DOT's statements in its argument and upon our review of the record, we agree with the trial court's decision that testimony as to remediation costs was not relevant to any issue to be determined in this valuation proceeding. We quash that portion of the district court's opinion which reversed the trial court's ruling that the testimony concerning the remediation costs was not admissible. We limit our holding in this regard to the facts of this case, in which there was a program for reimbursement of the remediation costs. We do not decide whether remediation costs would be relevant in a valuation proceeding which involved property for which such reimbursement was not available.
We agree with the district court that evidence of the fact that property is or has been contaminated is relevant to the market value of property in an eminent domain valuation proceeding. We recognize that contamination does affect property valuation as explained in 8 Melvin A. Reskin & Patrick J. Rohan Nichols' The Law of Eminent Domain § 14C.06[1], at 14C-52 to -53 (1994):
[A] discovery of contamination can "stigmatize" property. "Stigma" may be defined as the "reduction in value caused by contamination resulting from the increased risk associated with the contaminated property." In sum, many prospective buyers are afraid of the financial risk associated with contaminated or even previously contaminated properties and would therefore pay less for the property.
The "stigma" associated with contaminated properties stems from several sources. As a primary consideration, the knowledgeable buyer would be concerned about the direct costs of remediation. Purchasing the property would subject the owner to strict joint and several liability under such statutes as CERCLA. Even if the extent of the contamination was known and the remediation costs were estimated, the actual costs may well exceed the estimates. Second, contamination exposes the owner to an increased risk of liability to the public. Third, contamination poses financing problems. Lenders are often wary of contaminated properties, especially if they feel the financing arrangement would provide exposure as an owner/operator under statutes such as CERCLA.
Likewise, we note that this issue has been the subject of substantial recent discussion by property appraisers and that articles on the subject also recognize that contamination is a factor which the experts are to consider in valuation of property. See James A. Chalmers & Scott A. Roehr, Issues in the Valuation of Contaminated Property, The Appraisal Journal (Jan. 1993) at 28.
Holding contamination to be relevant to the market value of property in an eminent domain valuation proceeding is consistent with our decision in Florida Power & Light Co. v. Jennings, 518 So.2d 895 (Fla. 1987), in which we held that "any factor including public fear which impacts on the market value of land taken for a public purpose may be considered to explain the basis for an expert's valuation opinion," Id. at 899, and with Department of Agriculture & Consumer Services v. Polk, 568 So.2d 35 (Fla. 1990), in which we said:
Fair market value is generally defined as what a willing buyer would pay to a willing seller, neither party being obligated to act. See United States v. Virginia Elec. & Power Co., 365 U.S. 624, 81 S.Ct. 784, 5 L.Ed.2d 838 (1961). Inherent in the concept of a willing buyer and a willing seller is that both buyer and seller are aware of all relevant facts regarding the property at issue.
Id. at 41. However, holding that contamination is relevant to market value does not necessarily mean that evidence of contamination was admissible in this case.
While we find contamination to be relevant to the issue of fair market value, it is relevant as an explanation of the reason for a decrease in value just as the relevance of the fear of the power lines was relevant to explain the decrease in value about which the expert testified in Jennings. We specifically pointed out in the Jennings opinion that eminent domain valuation trials "[t]ypically ... [involve] real property brokers or appraisers who give valuation testimony based on, e.g., the current or potential use of the property in question, the population growth and development of the surrounding area, *925 and sales of similar property." Jennings, 518 So.2d at 895. In Jennings, the real property experts relied extensively on sales in other counties of comparable property located adjacent to power lines.
Similarly, in respect to property which is agreed to be or alleged to be contaminated, the focus of the opinion testimony must be value. Evidence of contamination, because of its prejudicial nature, should not be a feature of a valuation trial beyond what is necessary to explain facts showing a reduction in value caused by contamination.
Here, the proffered evidence regarding the decrease in value of the property was limited by the trial judge. The proffer consisted only of a summary representation by DOT's counsel that the expert could testify that the contamination stigma reduced the value of the property twenty to twenty-five percent. At oral argument, DOT's counsel did not know whether sales of comparable contaminated property or other facts and data were the underlying basis for the proffered opinion. For a real property expert's opinion of a reduction of market value to be admissible it must have a basis in facts and data reasonably relied upon by experts in the field of real property valuation, section 90.704, Florida Statutes (1993), and pass the test of section 90.705(2), Florida Statutes (1993).
An opinion as to a decrease in value cannot be a mere surmise that because property is contaminated, it logically follows that the value of the property is decreased. There must be a factual basis through evidence of sales of comparable contaminated property upon which to base a determination that contamination has decreased the value of the property. If there is no evidence in the record upon which the fact finder can determine that the value of the property has been decreased, then the petitioner would be entitled to the fair market value of the property valued as uncontaminated.
In Justice Overton's concurring opinion in City of Fort Lauderdale v. Casino Realty, Inc., 313 So.2d 649, 652-53 (Fla. 1975), he noted that the burden of proving the value of the land taken is upon the condemning authority. We now point out that as this relates to contaminated property, establishing any decrease in value is also upon the condemning authority. In this case, the timing of the taking impacts the valuation because the property was taken while in the process of being cleaned. The timing of the taking should not itself disadvantage the petitioners in valuing the property. Therefore, we hold in this case that the property should be valued as if the cleaning of the property had been successfully completed at the time of the taking.[1] Any comparable sales which DOT's expert uses as a basis for an opinion that contamination has resulted in a decrease in value must be of comparable contaminated property which has been successfully cleaned.
Petitioners argue that evidence of contamination stigma should not be admissible because the stigma to their property is only temporary. However, we believe this argument is answered by what we require as the basis for the expert opinion as to a decrease in the value of the property. If respondent's expert meets the test of section 90.705(2), Florida Statutes (1993), which we have set forth, then whether the stigma is or is not temporary will be encompassed within the examination and cross-examination of the experts.
In sum, we do not decide whether the proffered evidence was admissible, because the trial court too severely limited the proffer. We do decide that evidence of contamination is relevant to market valuation and is admissible upon an adequate factual predicate. We approve the district court's reversal of the trial court's judgment and remand for a determination by the trial court, upon a complete proffer of the expert's testimony, of whether the proffered evidence is admissible based upon the analysis we have here stated.
It is so ordered.
GRIMES, C.J., and SHAW, KOGAN and HARDING, JJ., concur.
*926 ANSTEAD, J., concurs specially with an opinion.
OVERTON, J., recused.
ANSTEAD, Justice, specially concurring.
I concur generally with the majority opinion, but I am uncertain about the effect of the opinion in imposing additional restrictions on evidence of valuation. I would answer the certified question as framed in the majority opinion in the affirmative, and leave the issues of evidence and valuation to be resolved according to prevailing law.
NOTES
[1] We limit this holding to the particular circumstances of this case, wherein the property had qualified for the EDI reimbursement program at the time of the taking.